Michel v. Kaiser and al.

No. 2819.

DELGADO & CO. *v.* A. C. WILBUR & CO.    S. B. CLARK *v.* A. C. WILBUR
    & CO.    THE LOUISIANA NATIONAL BANK *v.* T. L. MAXWELL,
    Sheriff.    *(In concurso.)*

The sixth section of the act of 1868, p. 194, concerning the transfer of bills of lading and the
    effects of that transfer, is only a legislative sanction given to the commercial law of
    universal application, by which it is held that a bill of lading, legally transferred, gives
    title to the property it represents. It does not clash with the statute of 1855 incorporated
    in the 3237th article of the Civil Code.

The article 3237 does not give any privilege upon produce sold for cash. A sale for cash
    means that, when the property is delivered, the money is to be paid, and where not paid
    after delivery, so long as the property remains in the possession and under the control of
    the vendee, the vendor's lien remains as between the parties, but the lien does not follow
    it when it passes into the hands of innocent third parties. Vendors can not complain if
    they sell for cash and still allow purchases to take away the goods without paying for the
    same. The fault being with them, the loss, if any, must be theirs also.

APPEAL from the Seventh District Court, parish of Orleans. *Collens;*
J. *Hornor & Benedict,* for appellees. *Lea, Finney & Miller,* for
Louisiana National Bank, appellant.

Justices concurring:  Taliaferro, Morgan, Wyly.

MORGAN, J.    A. C. Wilbur & Co., commercial copartners, shipped
per steamer Cortez seventy-nine barrels of molasses, for which they
received a bill of lading duly executed and delivered.

Seventy-one barrels of this molasses was purchased by Wilbur &
Co. from Delgado & Co.; fifty barrels on the seventh February,
1870, and twenty-one barrels on the eighth February, 1870; and eight
barrels were purchased by them of S. B. Clark on the eighth Febru-
ary, 1870.

It is admitted that the different sales of this property were made for
cash, and that they were delivered to the purchasers on the day of
sale.

It is admitted that the shippers indorsed the bill of lading which
they had received from the steamer Cortez, and transferred and
delivered it to the Louisiana National Bank for a valuable considera-
tion ; that is, the bill of lading was indorsed and delivered to the bank
to secure the payment of a bill of exchange for $1800 drawn by the
shippers upon Williams, Black & Co. of New York, payable ten days
after sight, which was negotiated to the bank upon the faith of said bill
of lading, to which the bill of exchange was attached according to
mercantile custom, and the bill of lading duly indorsed, passed to the
bank with the bill of exchange, for which bill of exchange the bank
gave value at the time it was so negotiated to it; that the bill of
exchange was duly presented for acceptance and payment, which was
refused; that the bill was protested ; that notice thereof was given
to the drawer ; and that the bank holds the bill of exchange and the
bill of lading.

It is admitted that the molasses in question was not paid for at the time of purchase, and that it was unpaid for at the time of the institution of these proceedings.

On the tenth February, 1870, Delgado & Co. and S. B. Clark, by separate proceedings, instituted suit against Wilbur & Co., alleging the sale of the property in question and the non-payment of the price therefor, and sequestered the same, it being then on the wharf in front of the steamship Cortez, and after the steamer had given bills of lading therefor. After the legal delays had expired, Delgado & Co. and Clark bonded the property and took it into their possession.

On the nineteenth of February the Louisiana National Bank instituted suit against Thomas Maxwell, sheriff, claiming to be entitled to the molasses in question, as holder and owner of the bill of lading above referred to, and asked for a sequestration of the same, which was ordered. As between Delgado & Co. and Clark and Wilbur & Co. there was judgment in favor of the former by default, regularly confirmed with vendor's lien and privilege on the property sequestered.

As between Delgado and Clark and the Louisiana National Bank, by agreement, the three cases were tried together as in a *concurso*.

There was judgment in favor of Delgado and Clark as against the bank, and the bank has appealed.

Who is entitled to this property—or the bonds which represent it— Delgado & Co. and Clark, the vendors? or the bank, the transferrees of the bill of lading given therefor by the steamer Cortez to Wilbur & Co., in whose possession the property was when it was shipped?

Delgado & Co. and Clark rest their rights upon the statute of 1855, incorporated in the 3227th article of the Civil Code, which declares that "any person who may sell the agricultural products of the United States in the city of New Orleans shall be entitled to a special lien and privilege thereon, to secure the payment of the purchase money, for and during the space of five days only after the day of delivery; within which time the vendor shall be entitled to seize the same, in whatsoever hands or place they may be found, and his claim for the purchase money shall have preference over all others."

The bank relies upon the sixth section of the act of 1868, p. 194, which enacts : " That cotton press receipts given for any goods, wares, merchandise, grain, flour or other produce or commodity stored or deposited with any cotton press, wharfinger or other person, or any bill of lading given by any forwarder, boat, vessel, railroad, transportation or transfer company, may be transferred by indorsement thereon, and any person to whom the same may be transferred shall be deemed and taken to be the owner of the goods, wares, merchandise, grain, flour or other produce or commodity therein specified, so far as

to give validity to any pledge, lien or transfer made or created by such person or persons," etc.

In our opinion the law is with the bank. The statute quoted is only the legislative sanction given to the commercial law, of universal application, we believe, that a bill of lading, legally transferred, gives title to the property it represents. 1 An. 80; 11 R. 140; 3 Kent's Commentaries 282; 1 Peters 386. But the conclusion to which we have come, does not, in our opinion, clash with the privilege granted by the 3227th article of the Civil Code.

We do not think that the article in question gives any privilege upon produce which is sold for cash. A sale for cash means that when the property is delivered the money is to be paid; no term of payment is agreed upon; it is the giving of money and the taking of the article sold, and the two acts are simultaneous. In this case it is admitted that the sale was for cash, and that the property was delivered to the purchaser on the day of sale. So long as the property remained in the possession and under the control of the vendees, as between the parties, the vendor's lien remained, but the lien does not follow it when it passes into the hands of innocent third parties. Nor can the vendors complain. If they sold for cash, and still allowed the purchaser to take off the goods without paying for them, the fault was with them; the fault being with them, the loss, if any, must be theirs. It is admitted, it is true, that the price was not paid at the time of sale; but it is not shown that this fact was known to the bank at the time it took the transfer of the bill of lading and advanced its money thereon. In law, and in fact, Wilbur & Co. were the owners, in possession, of the property when it was shipped; they were the holders and owners, of the bill of lading which represented it; there was no impediment in the way of their transferring it; they did transfer it, for value, and their transfer vested the property in the bank, to be held by it until the bill of exchange for $1800, with interest, be paid.

It was agreed between the parties that if the bank's title be maintained, judgment is to be rendered in its favor against Delgado & Co. and S. B. Clark for the amount of the bank's debt, according to the agreed valuation of the property which they respectively received, viz., $2023 80, the value of the seventy-one barrels released to Delgado & Co., and $231 31, the value of the eight barrels released to S. B. Clark.

It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that there be judgment in favor of the Louisiana National Bank and against Delgado & Co. condemning them to deliver to the said bank the seventy-one barrels of molasses released to them in the suit of Delgado & Co. v. Wilbur & Co., No. 2667 of the docket of the Seventh District Court,

or in default thereof that there be judgment in favor of said bank and against Isaac Delgado and Samuel Delgado *in solido,* condemning them to pay to the said Louisiana National Bank eighteen hundred dollars, with interest at the rate of five per cent. from the eighth February, 1870, until paid, and costs.

And it is further ordered, adjudged and decreed that there be judgment in favor of the Louisiana National Bank and against S. B. Clark, condemning him to deliver to the bank the eight barrels of molasses released to him in the suit of S. B. Clark *v.* A. C. Wilbur & Co., No. 2668 of the docket of the Seventh District Court, or in default thereof that there be judgment in favor of the Louisiana National Bank and against the said S. B. Clark, condemning him to pay to said bank two hundred and thirty-one dollars and thirty-one cents; the judgments as to each to be satisfied on payment of the debt, interests and costs due the said bank, appellees to pay the costs of appeal.

---

LUDELING, C. J.    I concur in the decree made in this cause solely on the ground that a third party can not be prejudiced by a privilege not recorded.    Constitution of 1868, 123.

---

HOWELL, J.    I concur for the reason given by the Chief Justice. Rehearing refused.