(48 South. 647.)

No. 17,273.

SCHEUERMANN v. MONARCH FRUIT CO.

(Jan. 18, 1909. Rehearing Denied March 1, 1909.)

1. SALES (§ 230*)—PROPERTY SUBJECT.

Where the owner and shipper has parted with his control of the goods, and cannot change their destination, his creditors cannot attach them.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 230.*]

2. CARRIERS (§ 58*)—TRANSFER OF BILL OF LADING.

The transfer by indorsement of a bill of lading to shipper's order vests the title to the goods in the transferee as purchaser or pledgee, as the case may be.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

3. CARRIERS (§ 56*)—BILL OF LADING—TRANSFER — VALIDITY — "NEGOTIABLE INSTRUMENT."

A bill of lading is a "negotiable instrument" by virtue of Act No. 150, p. 193, of 1868, and as such may be transferred for an ante-

cedent or pre-existing debt, or for any consideration sufficient to support a simple contract. Act No. 64, p. 152, of 1904 (Negotiable Instrument Law) § 24. A bill of lading, like any other negotiable credit, may be pledged by indorsement and delivery to secure any lawful obligation. Civ. Code, arts. 3136, 3158.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 168; Dec. Dig. § 56.*

For other definitions, see Words and Phrases, vol. 5, pp. 4767–4770; vol. 8, p. 7731.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by George Scheuermann against the Monarch Fruit Company. The First National Bank of Fresno intervenes, and the Morgan's Louisiana & Texas Railroad & Steamship Company was garnished. Judgment for plaintiff, and intervener appeals. Reversed, and suit dismissed, with directions.

Meyer Samuel Dreifus, for appellant. Lyle Saxon, for appellee Scheuermann. John Marshall Quintero, for curator ad hoc. Denegre & Blair and Victor Leovy, for appellee Morgan's Louisiana & Texas R. R. & S. S. Co.

LAND, J. Plaintiff sued the Monarch Fruit Company for $2,040 damages for breach of contract to ship and deliver a first-class car of London layer raisins, and caused to be attached a car of raisins that had been shipped by defendant company to the city of New Orleans under a bill of lading to shipper's order. The bill of lading was attached to a sight draft on the plaintiff for $2,290.72, drawn by the defendant company to the order of the First National Bank of Fresno, Cal. The bill of lading and the draft were also seized under the attachment.

A curator ad hoc was appointed by the court to represent the defendant, and later a curator ad hoc was appointed to represent the First National Bank of Fresno, Cal.

The car of raisins was sold at public auction by order of court.

The bank filed a petition of intervention and third opposition, alleging that it was owner of the said draft and bill of lading, that the same were not subject to attachment, and prayed for judgment accordingly, and further decreeing that the aforesaid draft and bill of lading be restored to the petitioner, with reservation of its rights to claim damages sustained by reason of the wrongful seizure of said property.

For answer to this intervention and third opposition the plaintiff, after pleading the general issue, averred that the bank was acting only as the agent of the defendant in collecting said draft with bill of lading attached, and that the property attached and sold belonged to the defendant company.

The curator ad hoc appointed to represent the defendant company for answer to plaintiff's petition pleaded a general denial.

Morgan's Louisiana & Texas Railroad & Steamship Company by intervention and third opposition asserted a carrier's lien and privilege for freight and storage to the amount of $578.22.

The case was tried, and there was judgment in favor of the plaintiff and the railroad company, decreeing that the plaintiff by virtue of his attachment was entitled to receive the proceeds of the sale of the raisins, to wit, $1,425.10, after first paying the railroad company the sum of $578.22, and the costs of the sheriff incurred.

The bank has appealed, and the contention in this court has been narrowed down to the issues presented by its intervention and third opposition.

C. A. Pawley, manager of the defendant company, testified that the draft in question was discounted by the First National Bank of Fresno, Cal., and the Monarch Fruit Company received credit for the full face value of the same; that the bill of lading referred to was indorsed and delivered to the bank as collateral security for the payment of said draft and any other indebtedness due the bank from the Monarch Fruit Company; that there was no understanding that the draft, if not paid, would be returned to said company, or that its account would be debited at any time with the amount thereof; that it was the understanding that the bank would hold the company responsible as drawer of the draft, and would probably have the right to charge it back, which has been done, but it was also the distinct understanding at the time that the bill of lading was not only for security for the draft, but also for any other indebtedness of the company to the bank; that at the time such indebtedness was large, and so continued, and is now largely in excess of the amount of said draft; and that the draft was not taken for collection.

O. J. Woodward, president of the bank, testified substantially to the same state of facts, and especially that the draft was not taken for collection, and that the bill of lading was indorsed, delivered, and received as general security for any indebtedness due the bank from the company. The same witness testified that at the time the draft was taken and credited to the company the latter owed a balance of $14,800, exclusive of interest, and now owes a balance of $29,000 to the bank.

E. A. Walrond, cashier of the bank, in his deposition corroborated the statements of the aforesaid witnesses, and testified that the bank purchased the draft in the usual course of business for its full face value, advanced by depositing the same to the credit of the Monarch Fruit Company, taking as security therefor the bill of lading, which was attached to said draft and indorsed and delivered to the bank at the same time, which bill of lading was also held as security for any other indebtedness due from the company to the bank. This witness fur-

ther testified that at the time the draft was executed and delivered to the bank the Monarch Fruit Company was indebted to the bank in a sum exceeding $14,000, and has ever since and at all times been so indebted in a sum not less than $10,000.

The contention of the plaintiff is that the bank was not the owner of the draft, but was a mere agent for collection. We do not think so. The evidence is to the contrary. By crediting the Monarch Fruit Company with the face value of the draft, the bank thereby acquired the ownership of the paper by purchase. Such a credit on deposit account is equivalent to a payment. The only liability of the Monarch Fruit Company resulting from this transaction was its contingent liability as drawer. After the dishonor of the draft, the bank charged its face value to the deposit account of the drawer. This operated a payment of the draft by the drawer to the payee and holder, and a cancellation of the instrument.

But the uncontradicted evidence shows that the bill of lading was indorsed and delivered to the bank, not only as collateral security for the payment of the draft, but also as security for any and all indebtedness that might be due to the bank by the Monarch Fruit Company. A pledge may be given to secure any lawful obligation. Civ. Code, art. 3136.

Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. Any consideration sufficient to support a simple contract, or an antecedent or pre-existing debt, constitutes value. Act No. 64, p. 152, of 1904, § 24.

Bills of lading are "negotiable by indorsement in blank or by special indorsement, in the same manner and to the same extent as bills of exchange and promissory notes." Act No. 150, p. 194, of 1868, § 9; Hardie & Co. v. V., S. & P. Ry. Co., 118 La. 253, 42 South. 793. Whatever difference of opinion there may be as to the extent of such negotiability, there is none as to the proposition that a bill of lading represents the goods in the hands of the common carrier, and that the transfer of the bill of lading by the shipper vests the title to the goods in the purchaser or pledgee for value. In Chopin v. Clark, 31 La. Ann. 846, the consignee refused to accept the consignment, and to pay the draft, with bill of lading attached, which had been transferred to a bank, and attached the goods for a balance due by the shipper. The bank intervened.

The court held that the delivery of the bill of lading vested the title and possession in the bank, which thereby acquired a pledge on the goods; citing National Bank of Green Bay v. Dearborn, 115 Mass. 229, 15 Am. Rep. 92, to the effect that in such a case the title remains in the consignor or his transferee.

In the case at bar there was no particular consignee, as the goods were deliverable to shipper's order. The intervening bank held the bill of lading, and the title to the goods as pledgee. The owner had parted with his control over the goods, and could not change their destination. In such a case the creditors of the owner cannot attach. Davenport, Tutrix, v. Adler & Co., 52 La. Ann. 269, 26 South. 836.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit and attachment be dismissed, with costs reserving the right of the First National Bank of Fresno, Cal., to sue for and recover whatever damages it may have sustained by reason of said attachment; and it is further ordered that said bank do recover and receive the proceeds of the sale of the property attached in this suit and now in the hands of the sheriff, to wit, the sum of $1,425.10, less costs incurred by the sheriff in selling said property, and less the sum of $578.22, hereby adjudged to be paid out

of said fund to the Morgan's Louisiana & Texas Railroad & Steamship Company.

It is further ordered that the fee of J. Marshall Quintero, curator ad hoc, be taxed at $25, and the fee of M. Dreifus, curator ad hoc, be taxed at $25, and that said fees and all other costs, except those of sale, be paid by the plaintiff.