LAND, J.
'Plaintiff as the holder and owner of an “order notify” bill of lading issued by the agent of defendant company at the •city of New Orleans, and acknowledging the receipt of 100 barrels of sugar from Drew & Ilarvey, to be transported to the city of Chicago, sued the defendant for the value of the sugar on the ground of refusal to deliver the same on demand and offer to surrender the bill of lading.
Defendant in its answer, after pleading the general issue, admitted that the bill of lading was signed by its agent and delivered to Drews & Harvey, but specially denied that the sugar or any part thereof was delivered to or received by the defendant company and that the agent had any authority to sign and issue the alleged instrument.
For further answer, and in the alternative, the defendant company charged that plaintiff had been guilty of laches in not forwarding the bill of lading and demanding delivery of the sugar at the point of destination, and in not communicating with Sprague, Warner & Co. of Chicago, who were to be notified, and in not making any inquiry of or giving any information to defendant.
The defendant averred that on account of such laches it was prevented from protecting itself against loss by timely recourse against the firm of Drews & Harvey, which was in good standing when the bill of lading was issued, but became insolvent before plaintiff communicated knowledge of the facts to defendant.
The district court rendered judgment in favor of plaintiff, and the defendant appealed to the Court of Appeal for the parish of Orleans, which affirmed the judgment in an elaborate and well-considered opinion.
The Court of Appeal found with the district court that the plaintiff was an innocent and bona fide transferee for value of the bill of lading, and proceeded to discuss and decide the case on the assumption that Drews & Harvey made no such shipment as was recited in the bill of lading, and consequently that the sugar was not delivered to the defendant company.
The district court ruled that the defendant was estopped' by the bill of lading to deny the receipt of the 100 barrels of sugar, and excluded specific evidence on the subject, but *1050 nondelivery to the carrier is inferentially shown by the evidence, and it may be said that plaintiff’s suit is based on that theory.
It is admitted in the opinion of the Court of Appeal that the English rule is that, even as against a bona fide consignee or indorsee for value, the carrier is not estopped by the recital of the bill of lading issued by its agent to show that the goods therein described were not in fact received for transportation. It is further admitted in the opinion that this is also the settled doctrine of the federal courts.
The Court of Appeal, however, cites decisions in some of the states to the effect that the carrier is estopped to deny the delivery of the goods to the prejudice of third persons, who have in good faith in the ordinary course of business acted upon the representations of the agent.
The Court of Appeal held that this controverted question was set at rest in the state of Louisiana by Act No. 150, p. 193, of 1868; and that the case of Hunt & Macauley v. Railroad Co., 29 La. Ann. 446, decided by a divided court is not an authoritative construction of the statute.
In their very able and interesting brief, counsel for defendant contend that the English rule has been followed in all the courts of the United States, federal and state, except those of New York, Kansas, and Nebraska, and that this rule was not abrogated or modified by Act No. 150, p. 193, .of 1868, making bills of lading negotiable, as was decided by the Supreme Court of this state in the Hunt & Macauley Case, supra.
The English doctrine, as set forth in Grant v. Norway, 2 Eng. L. & E. 337, and in Buckingham v. Freeman, 18 How. (U. S.) 188, 15 L. Ed. 341, was expressly approved by our predecessors in Fellows v. Str. Powell, 16 La. Ann. 316, 79 Am. Dec. 581. The same doctrine had been previously recognized in Fearn Putnam & Co. v. Richardson, 12 La. Ann. 752.
The question to be solved is whether this-rule is inconsistent with the provisions of Act No. 150, p. 193, of 1868. In the Hunt v. Macauley Case, two of the justices were-of opinion that this rule of commercial law was not affected by the provisions of said act. One of the justices concurred in the-decree, on the ground that the plaintiff was not a third party to the bill of lading. The two dissenting justices were of opinion that it was the intent of the statute “to protect both the carriers and the public, the former by punishing any persons in their employ for issuing false bills of lading or receipts, and the latter by putting such bills or receipts upon the same footing as commercial paper and protecting the holder in good faith with all the privileges and immunities given to-bills of exchange and promissory notes.”
It is apparent that there was an even balance of opinion on the question before the-court, and that therefore the point was not decided.
The object of the act of 1868 as stated in the title, was “to prevent the issue of false, receipts or bills of lading, and to punish fraudulent transfers of property by cotton presses, wharfingers, and others.”
The first section provides that no cotton compress, wharfinger, or other person shall issue any receipt or other voucher for goods, wares, etc., to any person purporting to be the owner or holder thereof, unless such goods, wares, etc., shall have been actually received, and shall be in store or on the premises, or under his control at the time of the issuing of the receipt.
The second section provides that no cotton compress, wharfinger, or other person shall issue any receipt or other voucher upon any goods, wares, etc., to any person for money loaned or other indebtedness, unless such goods, wares, etc., shall be at the time in store or upon the premises and under his-control.
The third section prescribes that duplicate- *1052 ¿receipts shall not be issued while the originals are outstanding without writing across ■the face of the same the word “Duplicate.”
The fourth section prohibits any cotton .press, wharfinger, or other person from selling, incumbering, shipping, transferring, or removing any goods, wares, etc., for which a receipt shall be given, without the written .assent of the holder of the receipt.
Section 5 of the act reads as follows:
“That no master, owner, or agent of any boat .or vessel of any description, forwarder, or officer or agent of any railroad, transfer or transportation company, or other person, shall sign or give any bill of lading, receipt or other voucher or document for any merchandise or property by which it shall appear that such merchandise has been shipped on board of any ■boat, vessel, railroad car or other vehicle, unless the same shall have been actually shipped and put on board and shall be at the time actually .on board, or delivered to such boat, vessel, car or other vehicle, to be carried or conveyed as expressed in said bill of lading, receipt, voucher ,or other document.”
Section 7 provides that any cotton press, wharfinger, forwarder, or other person who ■ shall violate any of the provisions of the act shall be deemed guilty of a criminal offense .and on conviction shall be fined in any sum not exceeding §5,000 or imprisoned in the ■State Penitentiary not exceeding five years or both. This section further provides as follows:
“And all and every person or persons aggrieved by the violation of any of the provisions .of this act may have and maintain an action at law against the person or persons, corporation .or corporations, violating any of the provisions .of this act to recover all damages, immediate ,,or consequential, which he or they may have ■ sustained by reason of any such violation as aforesaid, before any court of competent jurisdiction, whether such person or persons shall 'have been convicted of fraud as aforesaid under cthis act or not.”
Before referring to the sections relative to dhe negotiability of receipts and bills of lading, it is to be noted that the act makes ;it a criminal offense for any officer or agent ,of a railroad to sign or give any bill of lading -for property not actually delivered for shipment.
;It is to be further noted that the act gives to the party aggrieved a civil remedy by action for damages against the person or persons, whether convicted or not, violating any of its provisions.
It seems manifest that the criminal act of an agent or officer of a railroad in signing or issuing a false bill of lading cannot be considered within the scope of his employment or as binding on the principal.
The only civil remedy given by the statute is against the wrongdoer.
The act so far from abrogating or modifying the general rule that the agent has no authority in such cases, affirms and accentuates the rule by making the act of the agent a criminal offense, thus placing such act beyond the pale of legal recognition as done under an implied authority resulting from the nature of the employment.
The contention that the act makes a false bill of lading negotiable, and therefore binding on the' railroad when in the hands of a third innocent holder, is contrary to the express intent of the statute, which is to prevent the issue of false receipts and bills of lading.
The lawmaker certainly did not intend to denounce such issue as a felony and at the same time to encourage the violation of the statute by making false bills of lading negotiable. A careful reading of the provisions of the statute will demonstrate that the receipts and bills of lading intended to be made negotiable are such as are issued for property actually delivered or received.
Section 9 of the Act reads as follows:
“That all receipts, bills of lading, vouchers or other documents issued by any cotton press, wharfinger, forwarder or other person, boat, vessel, railroad, transportation or transfer company, as by this act provided, shall be negotiable by •indorsement in blank, or by special endorsement, in the same manner and the same extent as bills of exchange, and promissory notes now are.”
Surely, the act does not provide for the issue of false receipts and bills of lading. Section 6 of the same statute provides that receipts for goods, wares, etc., “stored or de *1054 ■.posited with any cotton press, wharfinger, or .other person or any bill of lading given by .any forwarder, boat, vessel, railroad, transportation or transfer company may be transferred by indorsement,” etc., but that “no property shall be delivered except on sur-render and cancellation of said original receipt or bill of lading.”
The statute places receipts and bills of .lading on the same plane; and section 8 ■specially provides that all the provisions of the act apply to bills of lading.
It is impossible to conclude that the law-maker intended to make false bills of lading-negotiable, and at the same time to deny negotiability to false receipts.
We concur in thé conclusion reached by .Justice Marr (Manning, Chief Justice, con-curing) in the Hunt & Macauley Case, that:
“When section 9 makes bills of lading negotiable, in the same manner and to the same ,extent as bills of exchange, and promissory notes are, it means genuine bills of lading.”
Any other construction would make the •carrier bound for the consequences of a criminal act committed by a person not .authorized to represent him.
It is therefore ordered, adjudged, and de- . creed that the judgment of the Court of Appeal and the judgment of the district court herein rendered be annulled, avoided, and reversed; and it is now ordered and decreed that plaintiff’s demand be rejected and his .suit be dismissed; and it is further ordered ■ that plaintiff pay all costs of this litigation.
NICHOLLS, J., absent.