HUTCHINGS, SEALY & CO., *a Partnership, etc., Appellants*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellee.*

No. 16,923.

SYLLABUS BY THE COURT.

1. LAW OF ANOTHER STATE—*Determination by Court or Jury.* A question as to what is the law of another state, although one of fact, is ordinarily to be determined by the court without the intervention of the jury.

2. ——— *Same.* Where the question as to what is the law of another state depends upon the effect to be given to a decision made by its court of last resort and upon the interpretation of a statute, and all the reported decisions relating to the matter are admitted, and show a difference of judicial opinion, there is no occasion for evidence on the subject. Under such circumstances the question should be decided by the court practically as one of law.

3. BILL OF LADING—*Negotiability.* A statute of Missouri provides that "all . . . bills of lading . . . issued . . . by any . . . railroad . . . company . . . shall be . . . negotiable by written indorsement thereon, and delivery in the same manner as bills of exchange and promissory notes." (3 Rev. Stat. Mo. 1909, § 11,956.) In that state bills of lading were already negotiable in the sense of being transferable by indorsement and delivery so as to enable the assignee to sue in his own name. *Held,* that the statute makes them negotiable in the stricter meaning of the term—that is, it gives them the quality of investing an innocent purchaser with greater rights than those possessed by the original holder.

4. ——— *Issuance without Receipt of Goods — Innocent Purchaser.* Under such a statute a railroad company is bound by a bill of lading which has passed into the hands of an innocent purchaser, although no goods were in fact received by it.

5. ——— *Crime to Issue without Receipt of Goods—Negotiability.* The rule is not altered by the fact that the statute makes it a criminal offense for any agent of a railroad company to issue a bill of lading unless the goods have actually been received.

Appeal from Labette district court. Opinion filed April 8, 1911. Reversed.

*F. M. Harris,* and *Karnes, New & Krauthoff,* for the appellants.

*John Madden,* and *W. W. Brown,* for the appellee.

The opinion of the court was delivered by

MASON, J.: Hutchings, Sealy & Co. brought action against the Missouri, Kansas & Texas Railway Company, alleging that the plaintiffs had advanced money upon certain bills of lading which the defendant had issued, by its assistant general freight agent, without the actual receipt of the goods therein described, and asking judgment for the loss they had sustained in consequence thereof. Among other matters the defendant in its answer set out that the bills of lading referred to were issued in Missouri, and that therefore the rights of the parties are governed by the laws of that state; that there the law is that a bill of lading issued by the agent of a railroad company without the actual receipt of goods is void, and that the company can not be held liable thereon by way of estoppel or in any other manner; that this condition of the law results from statutory provisions, which are quoted in full, and from a decision of the supreme court, which is described only by the title of the case and the volume and page of the reports in which it is to be found, namely, *Louisiana National Bank of New Orleans v. Laveille, et al.,* 52 Mo. 380. A demurrer to this portion of the answer was sustained by the district court. This ruling was reversed on appeal on the ground that the allegation as to the effect of the

decision of the supreme court must be taken as true, inasmuch as the language of the decision was not pleaded and the Kansas courts can not take judicial notice of it. (*Railway Co. v. Hutchings*, 78 Kan. 758.) The plaintiffs then filed a reply which, in addition to a general denial, quoted in full the opinion in the Laveille case, and also one subsequently handed down by the Kansas City court of appeals of a contrary tendency, and added that the latter decision "states the law in the state of Missouri." A demurrer to this reply was sustained, and the plaintiffs appeal.

The plaintiffs advance the theory that, inasmuch as the reply states what the law of Missouri is, an issue of fact is raised upon which they are entitled to introduce evidence, regardless of the interpretation placed upon the Missouri decisions referred to. We do not accept this view. By the weight of authority, and, as we think, by the better reason, the court ordinarily determines the law of a sister state without the intervention of the jury, notwithstanding the question is one of fact. (4 Wig. Ev. § 2558; *Christiansen v. Graver Tank Works*, 223 Ill. 142, 150, 151, and authorities there cited; 7 A. & E. Ann. Cas. 74, note.) Here the pleadings set out all of the reported Missouri decisions on the subject. The case is not one where any substantial aid can be had from oral testimony. There is nothing essentially local in the matter involved. Courts elsewhere are divided as to the effect of the issuance of a bill of lading where no goods are received. Two conflicting views are entertained. The opinion of the court of appeals shows clearly that in Missouri there is no general acceptance of either. In such a situation there would be no advantage in calling Missouri lawyers as witnesses; they could only give their personal judgment on a debatable question of law. If the decision of the supreme court of Missouri really covers the matter in controversy, that ends the inquiry. Whether it does so is a question to be determined by

31—84 KAN.

the court. · If it is found not to be conclusive, the court must then decide what shall be regarded as the law of Missouri in view of the decisions and statutes pleaded.

"That when it becomes necessary to establish the law of a foreign country it must be proved as facts are proved there is no doubt, but when, after such proof is given, the questions involved depend upon the construction and effect of a statute or judicial opinion, we think those questions are for the court and not questions of fact at all." (*Bank of China, etc., v. Morse,* 168 N. Y. 458, 470.)

In Massachusetts a distinction is made upon grounds thus stated, which we regard as not sufficiently cogent to change the general rule:

"Where the evidence of foreign law consists entirely of statutes or reports of judicial decisions, the constructions and effects of the statutes and decisions are usually for the court alone. . . . Where the decisions are conflicting, or where inferences of fact must be drawn, the question of what the law is becomes one of fact." (*Hancock National Bank v. Ellis,* 172 Mass. 39, 49.)

The conflict of authority upon the question whether a railroad company can ever be held liable upon a bill of lading where it has received no goods is fully discussed in the opinion written at the former hearing of this case. (*Railway Co. v. Hutchings,* 78 Kan. 758.) Notes on the subject are to be found in 6 L. R. A., n. s., 302; 22 L. R. A., n. s., 828; 7 A. & E. Ann. Cas. 731; and 4 A. & E. Encycl. of L. 533. The supreme court of Missouri, in the decision already referred to (*Louisiana National Bank of New Orleans v. Laveille, et al.,* 52 Mo. 380), approved and followed the authorities and the general reasoning upon the strength of which the doctrine has been established in many jurisdictions that a carrier is not liable upon a bill of lading, even to an innocent purchaser, unless the goods it describes have actually been delivered—authorities and reasoning which this court has found not persuasive. That decision therefore determines that the law of Missouri

forbids a recovery by the plaintiff, unless a fair dis-
tinction can be made between that case and this.  If so,
it must be on one of the following theories:  (1) That
the Missouri statute referred to effects a change in the
rule;  (2) that, as the bill of lading involved in the
Missouri case was issued by the agent of the owner of
a ship, the rule established does not necessarily apply
to such an instrument when issued by the agent of a
railroad company;  (3) that, even if it applies where a
bill of lading is issued by an ordinary agent of a rail-
road company, it has no application here because the
act of the assistant general freight agent was prac-
tically the act of the corporation itself.

The statute referred to was enacted in 1869, before
the Laveille case was decided; but it was not involved
in that decision, for the bill of lading there considered
was issued at New Orleans, and although in fact
Louisiana at the time had a similar statute, which has
since been held not to change this rule (*Henderson v.
Louisville & N. R. Co.*, 116 La. 1047), no reference was
made to it in the pleadings or the evidence, and the
courts of Missouri do not take judicial notice of the
statutes of other states (13 A. & E. Encycl. of L. 1058,
note 4) or presume that they are the same as those of
their own jurisdiction (13 A. & E. Encycl. of L. 1061,
note 2).  The statute contains these provisions:

"No  .  .  .  officer or agent of any railroad
.  .  .  company  .  .  .  shall sign or give any bill
of lading  .  .  .  for any merchandise or property,
by which it shall appear that such merchandise or
property has been shipped on board of any  .  .  .
railroad car  .  .  .  unless the same shall have been
actually shipped and put on board, and shall be at the
time actually on board or delivered to such  .  .  .
car  .  .  .  to be carried and conveyed as expressed
in such bill of lading.

"All  .  .  .  bills of lading  .  .  .  issued or
given by any  .  .  .  railroad  .  .  .  company,
for goods, wares, merchandise, grain, flour or other
produce, shall be and are hereby made negotiable by
written indorsement thereon, and delivery in the same

manner as bills of exchange and prom'ssory notes; and no printed or written conditions, clauses or provisions inserted or attached to any such  .  .  .  bills of lading  .  .  . shall in any way limit the negotiability or affect any negotiation thereof, nor in any manner impair the right and duties of the parties thereto, or persons interested therein; and every such condition, clause or provision purporting to limit or affect the rights, duties or liabilities created or declared in sections  .  .  . of this chapter, shall be void and of no force or effect.

"All bills of lading  .  .  . given by any  .  .  . railroad  .  .  . company, may be transferred by indorsement in writing thereon  .  .  . and any and all persons to whom the same may be so transferred shall be deemed and held to be the owner of such goods, wares, merchandise, grain, flour or other produce or commodity, so far as to give validity to any pledge, lien or transfer given, made or created thereby, as on the faith thereof, and no property so  .  .  . deposited, as specified in such bills of lading  .  .  . shall be delivered, except on surrender and cancellation of such receipts and bills of lading: Provided, however, that all such  .  .  . bills of lading, which shall have the words 'not negotiable' plainly written or stamped on the face thereof, shall be exempt from the provisions of sections  .  .  . of this chapter.

"Any warehouseman, wharfinger, forwarder or other person who shall violate any of the provisions  .  .  . of this chapter shall be deemed guilty of a criminal offense  .  .  . and  .  .  . every person  .  .  . aggrieved by the violation of any of the provisions of said sections may have and maintain an action of law against the person or persons, corporation or corporations, violating any of the provisions of said sections, to recover all damages  .  .  . which he  .  .  . may have sustained by reason of any such violation." (3 Rev. Stat. Mo. 1909, §§ 11,955-11,958.)

The particular clause requiring interpretation is that providing that bills of lading "shall be  .  .  . negotiable by written indorsement thereon, and delivery in the same manner as bills of exchange and promissory notes." (§ 11,956.) The question is whether the Missouri legislature intended to make bills of lading

strictly negotiable—that is, to give them the quality of investing an innocent purchaser with rights not available to the original holder.   The supreme court of the United States has decided to the contrary (*Shaw v. Railroad Co.,* 101 U. S. 557), and its decision has been followed by the supreme courts of Minnesota, Iowa and Louisiana. (*National Bank of Commerce v. Chicago, Burlington & N. R. Co.,* 44 Minn. 224, 234; *First Nat. Bank v. Mt. P. Milling Co.,* 103 Iowa, 518; *Lallande v. His Creditors,* 42 La. Ann. 705.)   The theory of those cases is that "negotiable," as used in the statute, means capable of being transferred by indorsement and delivery, so as to give the indorsee the right to sue in his own name.   That interpretation leaves this portion of the statute without force.   In Missouri bills of lading were already negotiable in that sense.  They were transferable by indorsement and delivery (*Vallé et al. v. Cerré's Adm'r,* 36 Mo. 575; *The Davenport National Bank v. Homeyer et al.,* 45 Mo. 145; *Bank v. M., K. & T. R'y Co.,* 62 Mo. App. 531, 539), and the assignee could sue in his own name (*Walker v. Mauro,* 18 Mo. 564; *Merchants Bank v. U. R. R. and T. Co.,* 69 N. Y. 373).   This condition of the law of Missouri prior to the enactment in question appears from the decisions cited.   If we are not authorized to take judicial notice of them, the same result follows from the presumption that the law on the subject was the same in Missouri as in Kansas.   It seems unlikely that the elaborate provisions of the statute regarding negotiability were intended merely as declaratory of the existing law.   We are led to adopt what appears to us the more natural conclusion—that they were intended to have the same effect as the statutes of other states which plainly make bills of lading negotiable in the stricter meaning of the term.   Such statutes are construed and applied in these cases: *Greenbaum Bros. & Co. v. Megibben,* 73 Ky. 419; *Tiedeman v. Knox,* 53 Md. 612; *William T. Hardie & Co. v. Vicksburg, S. & P. Ry. Co.,* 118 La. 253.

The decision of the federal supreme court in the Shaw case is largely based upon the argument that bills of lading are so little adapted to receive the attributes of full negotiability that a purpose to give them that quality is not readily to be inferred. This argument appeals to us with the less force because this court is aligned with those which maintain, against the numerical weight of authority, that an innocent purchaser of a bill of lading should stand upon a better footing than the original holder. That a number of states have by unambiguous legislation made bills of lading strictly negotiable tends also to weaken the effect of the argument. In the opinion in the Shaw case it was said:

"It can not be  . . .  that the statute which made them [bills of lading] negotiable by indorsement and delivery,· or negotiable *in the same manner* as bills of exchange and promissory notes are negotiable, intended to change totally their character, put them *in all respects* on the footing of instruments which are the representatives of money, and ·charge the negotiation of them with all the consequences which usually attend or follow the negotiation of bills and notes. Some of these consequences would be very strange, if not impossible. Such as the liability of indorsers, the duty of demand *ad diem,* notice of nondelivery by the carrier, &c." (*Shaw v. Railroad Co.,* 101 U. S. 557, 565.)

Of this suggestion it is said, in section 349 of Denis on Contracts of Pledge:

"But the object of such a law is simply to make of the transferee·of a bill of lading a holder for value and cut off the equities of the true owner, just as in the case of a transferee of a bill of exchange or promissory note; in other words, to render bills of lading negotiable paper. Can not the statutory law do in that respect, for bills of lading, what the common law, the mere law of custom, has done for the ordinary negotiable paper? The statute of Maryland has rendered bills of lading fully negotiable, as we will see presently. It is the law in France and other continental countries of Europe, under a different system. It is the old com-

mercial law of the oldest commercial states of Europe. The reason of such a rule, where it exists, is the same as the reason of the negotiability of bills of exchange and promissory notes—to promote commerce by facilitating financial operations."

The uniform bill of lading act, recommended by the conference of commissioners on uniform state laws, contemplates the issuance of negotiable bills of lading which, in the hands of an innocent purchaser, shall be conclusive against the carrier.

Treating the bills of lading as strictly negotiable, the fact that they were issued without the actual receipt of the goods constitutes no defense against an innocent purchaser. It amounts merely to a failure of consideration. As they were executed by an agent charged with the execution of such instruments, they are binding upon the company, as far as is necessary to protect intervening rights, notwithstanding the agent's breach of duty. (10 Cyc. 1174; 1 A. & E. Encycl. of L. 349; 7 A. & E. Encycl. of L. 794, note.)

The rule is not changed by the fact that the statute makes it a criminal offense for any agent of a railroad company to issue a bill of lading unless the goods have actually been received. Such an act would be wrongful without the statute; that it is penalized does not alter the situation so far as the rights of third parties are concerned. As was said of a similar enactment in a dissenting opinion in *Hunt & Macaulay v. Mississippi Central Railroad Company*, 29 La. Ann. 446:

"The animus of this statute is unmistakable. It was intended to protect both the carriers and the public—the former by punishing any persons in their employ for issuing false bills of lading or receipts, and the latter by putting such bills or receipts upon the same footing as commercial paper, and protecting the holder in good faith with all the privileges and immunities given to bills of exchange and promissory notes." (p. 463.)

In *William T. Hardie & Co. v. Vicksburg, S. & P. Ry.*

*Co.*, 118 La. 253, 258, this dissenting opinion was approved, the decision of the court being overruled.

We need not determine whether the Laveille case can be distinguished upon the other grounds mentioned, but some additional suggestions in that connection may be pertinent.

In Daniel on Negotiable Instruments it is said:

"The master of a ship is generally separated from his principals, and beyond their supervision and control. Roving the seas in commercial enterprises, and often thousands of miles apart from those who trust him, the policy of the law might well shield his principals from responsibilities which, were he in a position under their inspection and subject to their superintendence, it might withhold. And in respect to railroad corporations, express companies, and other carriers by land, whose agents are within view of superior officers, and subject to speedy removal for delinquencies, it might be well contended that their shipping agents, when acting within the apparent scope of authority, would bind their principals, although in the particular case violating actual authority, and committing a breach of trust." (Vol. 2, 5th ed., § 1733*a*.)

The contrary view is thus presented in *Balto. & Ohio R. R. Co. v. Wilkens, &c.*, 44 Md. 11:

"The master of a ship is necessarily clothed with a real as well as an apparent authority, much more extensive than belongs to the station agents of a railroad company. His control over the vessel, his power to make contracts respecting it, his discretion in the use and management of it for the benefit of his owners, on the high seas and in distant ports, reach far beyond those of the latter. A bill of lading signed by him and forwarded by mail oftentimes arrives at the port of destination months before the vessel and cargo, and the necessities as well as the convenience of commercial transactions, requiring its transfer, and advances on the faith of it, are much stronger than can possibly exist in dealing with similar instruments in railway transportation. In the latter but a few days usually intervene between the arrival of the bill of lading by mail, and the goods by the cars, and, besides this, the telegraph is at hand affording to anyone asked to make

advances on the faith of such documents easy and
speedy means of ascertaining whether the goods have
been in fact laden in the cars or received at the depot
of shipment or not.  If, therefore, there be any good
reason for exempting the owner of a vessel from re-
sponsibility for a bill of lading, false in this respect,
signed by the master who is his agent, it must apply
*a fortiori* to a railway company, with respect to similar
acts of its station agents along its line of road."  (p. 25.)

(See, also, *Robinson v. Memphis & Charleston R.
Co.*, 9 Fed. 129, 138, 139.)

In *Smith v. Mo. Pac. R'y Co.*, 74 Mo. App. 48, 56, it
was held that a bill of lading signed by the general
freight agent of a railroad company is in effect issued
by the company itself, and is valid in the hands of in-
nocent third parties although the goods were not in
fact received.  We have no doubt that the signature
of an assistant general officer is as effective as that of
the officer himself.

The judgment is reversed and the cause remanded,
with directions to overrule the demurrer to the reply
and proceed in accordance with the views here ex-
pressed.

BENSON, J., not sitting.