No. 19,437.

HATTIE ROBINSON, *Appellee,* V. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Death of Husband—Action—Mental Capacity of Widow to Make Settlement.* An instruction that, upon the issue whether a claimant was mentally incapable of doing business at the time of a settlement, the jury may consider the adequacy of the amount paid, held, under the circumstances stated, to have been erroneous as attaching too much importance to that phase of the matter.

2. SAME—*Jurisdiction of Courts of Foreign State.* An action may be maintained in another state, having laws similar to our own, by an administrator there appointed, for the death in Kansas of the resident of a third state, notwithstanding the previous appointment there of a domiciliary administrator, who could maintain no such action, because not permitted by the laws of his state.

Robinson v. Railway Co.

3. SAME—*Judgment—Reversal—When New Trial is Unnecessary.* Upon the reversal of a judgment a new trial need not be ordered where the result would turn upon the proof of the laws of another state. Where such laws are capable of ·exact ascertainment, a judgment may be ordered by this court according to the fact.

4. SAME—*Presumption as to Jurisdiction of Courts of Another State.* The rule applied, as declared in *Dodge v. Coffin*, 15 Kan. 277, that "It will be presumed, in the absence of evidence to the contrary, in favor of courts of general jurisdiction of sister states, that they have the authority they assume to exercise, and that the modes of procedure pursued by them, though different from that established by the laws of this state, are authorized by the laws of. the state in which they act." (Syl. ¶ 2.)

5. SAME—*Settlement of Claim—Dismissal of Action—Bar to Further Action.* A judgment of dismissal, appearing to· have been entered by consent of the plaintiff, upon a settlement of the claim sued upon, is a bar to a further action thereon.

6. SAME. The record of the dismissal by the plaintiff, on settlement, of an action brought in another state, by an administrator there appointed, for damages for the death in Kansas of the intestate, who was a resident of a third state, payment in accordance with such settlement having actually been made to the widow, is a bar to an action brought here by the widow.

Appeal from Phillips district court; WILLIAM S. LANGMADE, judge. Opinion filed July 10, 1915. Reversed.

*Paul E. Walker,* and *Luther Burns,* both of Topeka, for the appellant.

*W. A. Barron,* of Phillipsburg, *I. M. Mahin,* and *F. W. Mahin,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

MASON, J.: J. A. Robinson, a resident of Colorado, in January, 1909, left Denver upon a freight train, accompanying a shipment of live stock and goods over the Rock Island railroad to Apache, Okla. At Phillipsburg, in this state, some switching was done, in the course of which the car containing his property was severely jolted. Shortly afterwards he was found dead in the car, bruises upon his head showing that he was killed by some violent means. In January, 1911, an action was brought against the company by his widow, charging his death to have been occasioned by the negligent handling of the car. She recovered a judgment and the defendant appeals.

Robinson v. Railway Co.

Many questions are raised, but the view taken by the court of two phases of the matter makes it unnecessary to discuss any other in detail. The body was taken for burial to the home of the decedent's father, in Iowa. On March 12, 1909, the father, Jesse Robinson, petitioned an Iowa court to be appointed administrator, and was appointed and qualified. Six days later he brought an action as administrator in the Iowa court to recover damages for the death of his son. On April 12 the defendant filed a general denial. On April 24 the administrator applied to the court for leave to settle the claim against the railroad company for $750, and an order was made to that effect. On May 6, 1909, the company paid to the widow $750 ($50 of which was on account of the freight paid) and took a receipt signed by her and by a domiciliary administrator appointed in Colorado, reciting a compromise of the claim, and purporting to release all demands growing out of the matter. On November 22 an entry was made upon the records of the court in which the damage suit was pending, which the company asserts had the effect of a dismissal with prejudice, constituting a bar to any further action.

The plaintiff contends that at the time of the settlement she was suffering from an illness which, combined with the shock she had received, so far impaired her faculties that she was incapable of transacting business. The defendant complains of an instruction given upon that issue, to determine the force of which involves a consideration of the evidence on the subject. Several witnesses, two of them physicians, testified that she was in a highly nervous condition, and in their judgment mentally unsound and incapable of transacting business. She herself testified that between the summer of 1908 and September, 1909, she was sick most of the time; that she remembered some things partly but did not remember others; that she did not remember anything about the conversation on the day the release was signed, but there was an impression left on her mind of a railroad man being there that day, who had come to pay for the death of her husband, but she could not remember whether she settled with him or anything about what she did do. The day after the settlement she wrote a letter to her relatives in which she said:

"I will now write you a few lines in haste. I wrote you the other day I suppose you have got it before now.

"We have been sick every since I wrote and I write soon as I find out about the settlement with Guss [Gus Kyle, who had accompanied J. A. Robinson on the trip]. We had to pay him for he had a neighbor wittness with him once when he first got back & Ed Lary [the Colorado adminis- trator] promised to pay him if he staid around here & on that grounds we could n't keep from paying it, but it could n't be helped & I hope he feels better & that it is the last he will ever get out of me. Will [W. H. Anderson, who also had accompanied Robinson] came back here too. yu know I suppose but he could n't do any thing or no one when Guss brought up this plea. Will had just as well staid in Iowa, but he was crazy to get back here I think & that was an excuse for him, but I have a job on the road for work for the mules at 4.00 a day and I told him he can drive them. The work may last most all summer if he gets along with the road boss, if not I will get some one else. He said he work for $20 month and I could n't get a man here for less than 1.00 or 1.50 a day so I can save some from what they earn me. The R. R. man came here and settled with me. he said he would n't and could n't settle with Boorman [the lawyer who brought the action in Iowa] no one but me, so he gave me the draft for 750. You send me what your expenses have been. Time I pay Guss, Will & Boorman I wont have much left. . . . You send me what you want for this trouble & expenses & I am willing to send you. I wrote Boorman for his charges. I fear he will want all I got. Write sometime soon."

On the same day she wrote to the Iowa lawyer who had brought the damage action there:

"The claim agent has come here to see me and urged or said that they would not settle with no one but the widow or the right persons and he had come here to find out the full particulars so he gave the draft to me for 750.00 and I have it cashed now you will send me your charges. And it is all settled. Write me what you think and ect. & ect. In Haste, I am, yours Truly."

In November, 1910, she wrote to the clerk of the Iowa court, asking copies of the papers in the proceedings there, saying:

"I am a Mrs. Hattie Robinson.—My husband was killed a year ago last Jan. at Phillispburg, Kansas. And Lawyer Boreman of Atlantic took the case, and seemed to have been bought off by the R. I. Railroad, any how he wrote me to settle with the company for the sum of 750,— which they offered me & I did so from his advice.

"Now these lawyers of Kansas are trying to reenstate the case for me. And I will send you their last full letter that you may better understand what we want and have you send all such papers you can get for us that we will need. I am not writing Mr. Boreman, thinking he might not be fair with me. And I have never employed any other lawyer in Iowa. My father in law is Jesse Robinson at Griswold. Now in regard to a judg- ment entered in the case in Iowa, I don't know anything about it but don't think there was a thing done only Boreman sworn as Attorney. I signed

the paper, to that effect and that was all. & I dont know what Mr. Robinson did but the suit was brought in my name. But we must have all these papers or copies and we know of no other to write too. And you please see to it and send to Mrs. Hattie E. Robinson, Brush, Colo. Lock Box 5.

"As soon as convenient and your charges."

The letters written just after the settlement go far to establish a clear conception of the entire transaction and a capacity to do business intelligently. (*Wisner v. Chandler*, 95 Kan. 36, 147 Pac. 849.) The instruction to which objection is made reads as follows:

"You are instructed that in case you find that the death of said J. A. Robinson was caused by the negligence of defendant company and its employees and that defendant is primarily liable you may take into consideration the adequacy or inadequacy of the amount named in the settlement or release signed by the plaintiff May 6th, 1909, for the death of her husband, as bearing upon the question of her competency or incompetency to make said settlement of release."

It is doubtless true in a sense that in determining the condition of the plaintiff's mind the amount accepted by her in settlement may be taken into account—neither that nor any other circumstance need be excluded from consideration. But no other instruction was given on this subject, except a statement of the issue, and the singling out of that matter gave it an apparent importance beyond what it was entitled to, and may well have led the jury to attach too much weight to it. They may have held the negotiations for a settlement void because of the result reached rather than because of the condition of the plaintiff's mind during their pendency. Moreover, whatever inference of incompetence might legitimately be drawn from a claimant accepting a small sum in settlement for an injury would turn upon whether the adjustment was improvident in view of all the circumstances, including the possibilities of being defeated in litigation, a matter in which the advice of a lawyer would naturally be very influential. The instruction quoted makes no reference to this phase of the matter, but rather merely directs the attention of the jury to the small amount received in comparison with the extent of the loss she had suffered. Assuming that the railroad company was admittedly liable, the amount paid was obviously inadequate to compensate the plaintiff for her loss, and this con-

sideration may have formed the real basis for the jury's disregarding the settlement.

It was shown that under the laws of Colorado the administrator could not maintain an action for the death of his intestate, and therefore he could bring none here. (*Limekiller, Adm'x, v. H. & St. J. Rld. Co.*, 33 Kan. 83, 5 Pac. 401.) Doubtless his release was therefore without effect. The difficult question arises upon a consideration of the effect of the Iowa proceedings. In behalf of the plaintiff it is asserted that the appointment of an administrator in Iowa was wholly void, and that even if it had been valid, the record in the Iowa damage action is not such as to interpose a bar to the present proceeding.

The appointment of an administrator in Colorado was made on February 8, 1909. It is contended that this precluded a later appointment in Iowa. The existence of a domiciliary administrator, however, does not cut off an appointment elsewhere, not based on domicile. (18 Cyc. 69.) It is urged, upon the authority of *Metrakos v. Railway Co.*, 91 Kan. 342, 137 Pac. 953, that the Iowa administrator could not maintain an action here for the death of his intestate. That case (the deceased being a resident of Kansas) turned upon the impolicy of recognizing a foreign administrator to the exclusion of one who should have been appointed here. A more serious attack upon the validity of the Iowa appointment is based upon the fact that the administrator testified in the present case that so far as he knew the deceased had no property in Iowa. The order of appointment recites the existence of personal property estimated at the probable value of $50. The requirement of the federal constitution that full faith and credit shall be given to the judicial proceedings of another state does not forbid an inquiry into the question whether the facts existed upon which jurisdiction depended, even to the extent of contradicting the record. (13 A. & E. Encycl. of L. 992, 993; 23 Cyc. 1576, 1580.) Such an inquiry is permitted to the same extent to which it could be had in respect to a domestic judgment. (23 Cyc. 1546.) This court has held that the appointment of an administrator may be attacked collaterally by a showing that in fact the decedent left no property upon which to base it. (*Perry, Adm'r, v. St. J. & W. Rld Co.*, 29 Kan. 420.)

That decision is contrary to the rule applied with respect to other jurisdictional matters in the same connection. (*Cox, Adm'r, v. Kansas City,* 86 Kan. 298, 301, 120 Pac. 553. See, also, *Miller v. Miller,* 89 Kan. 151, 130 Pac. 681.) It was justified by the argument that to say that a finding of fact by a court is conclusive evidence of its own jurisdiction would be "reasoning in a circle"—an argument that can hardly be deemed sufficient, since the ordinary rule is that no collateral attack can be made upon a finding of fact made by a court of record, even although its jurisdiction depends upon it. In a note in 81 Am. St. Rep. 558, it is said:

"This decision is in conflict with the great weight of authority, and, we believe, opposed to every substantial reason. As we have previously seen, convenience, justice, and public policy demand a different rule when the administrator's authority is drawn in question in a collateral proceeding."

In *Ewing v. Mallison,* 65 Kan. 484, 70 Pac. 369, it was held that the authority of an administrator may be impeached collaterally by showing that the deceased was not a resident of the county where the appointment was made. This is likewise against the great weight of judicial opinion. (Note, 81 Am. St. Rep. 548-552.) The decision is largely based upon a statement that "Where the jurisdiction depends on some collateral fact which can be decided without going into the case on its merits, then the jurisdiction may be questioned collaterally and disproved, even though the jurisdictional fact be averred of record, and was actually found on evidence by the court rendering the judgment." (17 A. & E. Encycl. of L. 1084.) But that text was explicitly made applicable only to proceedings in courts of inferior jurisdiction, and in the note reference was made to the different rule which obtains with respect to those of general powers. (17 A. & E. Encycl. of L. 1080-1081.) These decisions will not be overruled. Any inconvenience resulting from them may be avoided by legislation. But the fact that they are out of harmony with the prevailing view of the law is a reason for confining their application within the narrowest limits.

The judgment in this action can not in any event be upheld on the theory that the appointment of an administrator in Iowa was a nullity. The record made a *prima facie* case for its validity. The evidence against it was inconclusive. In

Kansas an administrator of the estate of a nonresident can not be appointed to collect a death claim unless the decedent left property in the state. (*Perry, Adm'r, v. St. J. & W. Rld. Co.,* 29 Kan. 420.) But an appointment for the real purpose of such collection may be made upon the basis of purely nominal assets. (*Cox, Adm'r, v. Kansas City,* 86 Kan. 298, 120 Pac. 553.) It can hardly be doubted that if it had been to the interest of the plaintiff to uphold the Iowa appointment evidence might have been found of the existence of some inconsequential article upon which to base jurisdiction. The utmost effect of the testimony given was to make the validity of the appointment a question of fact for the jury. It was not submitted to them, the trial court evidently considering the appointment a nullity as a matter of law. We know as a matter of fact that in Iowa an administrator may be appointed, in the absence of any property, to enforce, for the benefit of the persons entitled thereto, a claim for damages growing out of the death of a nonresident intestate. (*In re Stone's Estate,* [Iowa, 1914] 145 N. W. 903.) But this was not shown in evidence, and judicial notice is not taken of the laws of another state. If the cause were remanded for the determination of the question whether the Iowa court had power to appoint an administrator it could unquestionably be shown that by the law of that state jurisdiction existed irrespective of the presence of property. While that is classed as a question of fact, it is essentially one for the determination of a court without the intervention of a jury (*Hutchings v. Railway Co.,* 84 Kan. 479, 114 Pac. 1077), and one that admits of ascertainment beyond question. In *Bershears v. Nelson,* 80 Kan. 194, 101 Pac. 1011, this court reversed a judgment rendered on an account for intoxicating liquors bought and sold in Missouri, because of the plaintiff's failure to prove that such a sale was not unlawful in that state, the presumption being that a prohibitory law like that of Kansas was in force there. But that decision was rendered before the taking effect of the present code, by which the power of the supreme court to end litigation on appeal has been enlarged. (Civ. Code, §§ 580, 581; *Ratliff v. Railroad Co.,* 86 Kan. 938, 122 Pac. 1023; *Hess v. Conway,* 93 Kan. 246, 251, 144 Pac. 205.) In the case last cited it was said:

"Sometimes the court is in need of extraneous evidence respecting some situation or fact to enable it to determine, not the propriety of the

conduct of the district court, but the nature of the judgment to be directed. Sometimes a document, or public record, or other item of evidence of like character, material to a proper determination of the appeal and substantially incontestible, is called for, or is examined if produced, and then is treated in the same way as an admission of the parties would be treated if found in the record. These instances are illustrative, and no doubt many occasions will present themselves when it will be important for the court to avail itself of knowledge of some fact not established at the trial in order that it may make just disposition of an appeal." (p. 251.)

It would be a futile proceeding to send a cause back to the district court to investigate a question concerning which there can be no actual controversy whatever. We shall therefore treat the appointment of the Iowa administrator as valid.

It remains to consider the effect of the record of the disposal of the action for damages brought in the Iowa court. It reads in full as follows:

"In the District Court of the State of Iowa in and for Cass County.
In Vacation.
Jesse Robinson, Admr. vs. C., R. I. & P. Ry. Co.
No. 6900.

"Now, on this 22nd day of November, 1909, the above entitled cause is settled and costs paid, and is dismissed by the clerk in vacation at request of plaintiff.

"District Court Record 'T' page 427. Entry on face of Appearance Judgment Docket and Fee Book No. 19, case No. 6900.

"This action is hereby dismissed.
"H. M. BOORMAN, Att'y. for Plff."

For the plaintiff it is contended that this is not the record of a judgment at all; that the law and practice of Iowa must be presumed to be the same as in this state, no showing having been made to the contrary, and that here such an entry would not disclose a final judgment. It is true that in Kansas a judgment may not be rendered in vacation, or entered by the clerk (except upon return of a verdict, as provided in section 407 of the code) without some action having been taken by the judge. But even here the record quoted would show that the plaintiff agreed to the dismissal of the case because of its having been settled. Our code provides that an action may under certain circumstances be dismissed "by the plaintiff." An order of the court is necessary to the actual dismissal (*Boot and Shoe Co. v. Derse*, 41 Kan. 150, 21 Pac. 167), but

10—96 KAN.

the plaintiff has full control of the matter. The record therefore, interpreted in the light of our own practice, shows a judicial proceeding—the beginning of an action, and its discontinuance at the instance of the plaintiff because of a settlement. And the requirement of the federal constitution is that full faith and credit shall be given, not alone to judgments rendered in other states, but "to the public acts, records, and judicial proceedings of every other state." (Const., U. S., Art. 4, § 1.)

The practice is not uniform with respect to. the extent to which judicial notice is taken of the statutes of another state in determining the effect of the record of a judgment there rendered. In a few states the courts take judicial notice of the laws upon which the judgment is based. (2 Freeman on Judgments, 4th ed., § 571; Note, 11 Am. Dec. 783.) A reason originally given for this practice was that in the event of an appeal to the federal supreme court cognizance would be taken of such laws—a reason which is falacious, since the fact is otherwise. (*Hanley v. Donoghue,* 116 U. S. 1.) That court has declared, however, that "where one state recognizes acts done in pursuance of the laws of another state, its courts will take judicial cognizance of those laws, so far as it may be necessary to determine the validity of the acts alleged to be in conformity with them." (*Carpenter v. Dexter,* 75 U. S. 513, 531.) Applying this principle the author of the note last cited said: "Certainly a court can not give effect to a judgment, or recognize it as a judgment, without taking notice of the law under which it was obtained." (11 Am. Dec. 783.)

Whatever may be the case elsewhere, in Kansas the rule that judicial notice is not taken of the law of another state is subject to this important exception—notice is taken without proof of the constitution of other states, so far as the jurisdiction of courts is shown. (*Butcher v. The Bank of Brownsville,* 2 Kan. 70; *Dodge v. Coffin,* 15 Kan. 277.) In the case last cited an Illinois judgment was given effect, upon a record stating that it was rendered in vacation, without any showing of a difference in the laws of the two states. A paragraph of the syllabus reads:

"It will be presumed, in the absence of evidence to the contrary, in favor of courts of general jurisdiction of sister states, that they have the authority they assume to exercise, and that the modes of procedure

Robinson v. Railway Co.

pursued by them, though different from that established by the laws of this state, are authorized by the laws of the state in which they act." (Syl. ¶ 2.)

Justice Valentine dissented from the proposition that judicial notice should be taken of any part of the constitution of another state, but reached the same result, so far as relates to the present matter, expressing his conclusion in this language:

"But the presumption in favor of the regularity and validity of judicial records is sometimes strong enough to make the record of judicial proceedings from another state valid, although, if its regularity and validity were to be determined by the laws of our own state, we would hold the record or some portion thereof void. . . . In such a case the presumption in favor of the regularity and validity of the record is stronger than the presumption that the laws of the other state are like ours; and in such a case it is presumed that the laws of the other state are such as to make the record valid." (p. 285.)

To an extent, at least, this is in accordance with the practice elsewhere. In a note in 103 Am. St. Rep. 322 it is said:

"The general tendency is to assume that a court of another state would not have undertaken to exercise a jurisdiction which it did not possess, and he against whom its judgment is sought to be asserted must usually assume the burden of proving that its assumption of jurisdiction was unauthorized."

(See, also, *State ex rel. v. Weber*, 96 Minn. 422, 105 N. W. 105; *Council Bluffs Savings Bank v. Griswold*, 50 Neb. 753, 757, 70 N. W. 376.)

While in other jurisdictions there are cases to the contrary (Note, 67 L. R. A. 56) the Kansas decision quoted from affords a just basis for upholding the Iowa administratorship, and perhaps for presuming that the laws of Iowa empowered the clerk to enter the order of dismissal. Such presumption is in accordance with the actual fact, although this was not shown in evidence. The Iowa statute provides that "Any party to any claim may dismiss the same in vacation, and the clerk shall make the proper entry of dismissal on the record." (Code of Iowa, 1897, § 3768; *Luse v. Luse*, 144 Iowa, 396, 122 N. W. 970.) In any event, upon the grounds already stated, no good purpose could be served by sending the case back to the district court to ascertain the law of Iowa on the subject.

The fair interpretation of the record is that of a dismissal upon agreement or settlement, which is a bar to a further ac-

tion. (23 Cyc. 1141; 24 A. & E. Encycl. of L. 807; *United States v. Parker,* 120 U. S. 89.) In *Jacobs v. Marks,* 182 U. S. 583, it was held that a dismissal upon a promissory agreement which was not complied with did not constitute an adjudication, but the rule declared in the Parker case, just cited, was not modified. No suggestion is made that the settlement on which the dismissal was based was not in fact performed. The mental condition of Mrs. Robinson at the time is not a basis for annulling the force of the judicial record in Iowa. We are of the opinion that it would have been necessary to have that set aside before the present action would lie.

The judgment is reversed and the cause remanded with directions to render judgment for the defendant.