Danciger v. Cooley.

---

No. 19,945.

ABE DANCIGER et al., Partners, etc., *Appellants,* v. D. G. COOLEY, *Appellee.*

SYLLABUS BY THE COURT.

1. VERDICT AND JUDGMENT—*Controversy Settled.* A controversy as to the application of a payment made by a debtor held to be settled by the verdict and judgment.

2. AGENCY—*For Collecting Liquor Bills—Violation of Law—No Recovery of Amount Collected.* A principal who employs an agent to make collections under circumstances which make the act a violation of the criminal law can not maintain an action for the recovery of the amount collected.

3. LIQUOR LAWS—*Presumption as to Laws of Missouri.* Under the circumstances of this case it will not be presumed that the sale of intoxicating liquors is forbidden by the laws of Missouri.

4. LIQUOR SHIPPED TO ORDER OF SHIPPER—*Bill of Lading and Liquor Delivered to Another for His Own Use—Unlawful.* One who ships liquor to his own order, and delivers the bill of lading to another to enable him to receive it for his own use, thereby violates the provision

of the Kansas statute forbidding a person to whom intoxicating liquor has been consigned to give to any other person an order upon the carrier for it, with the purpose of enabling him to receive it for himself.

5. SAME—*No Interference with Interstate Commerce.* The statute referred to in the foregoing paragraph, as applied to a shipment from another state into this, under the circumstances there stated, is not invalid as involving an undue interference with interstate commerce, irrespective of the provisions of the Webb-Kenyon act.

6. SAME—*Construction of Federal Statutes Relating to Importation of Liquors from one State to Another.* Where liquor is shipped into this state to the order of the shipper, his representative who collects the purchase price and delivers to the purchaser the bill of lading, thereby violates the act of congress which provides a punishment for any person who, in connection with the interstate transportation of intoxicating liquor, shall collect the purchase price from the consignee, or act as the agent of the buyer for the purpose of completing the sale thereof, saving only in the actual transportation and delivery of the same.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed May 6, 1916. Affirmed.

*R. E. Jacobs, Harry L. Jacobs,* both of Kansas City, Mo., *J. P. McLaughlin,* of Osage City, and *C. P. Cowgill,* of Topeka, for the appellants.

*Otis E. Hungate,* of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Danciger Brothers sued D. G. Cooley upon two accounts for liquor sold to him, in one instance by the plaintiffs and in the other by a dealer who assigned the claim to the plaintiffs; and also upon two similar accounts for collections made by him, for the plaintiffs and the other dealer, from purchasers of liquor. The defendant pleaded payment of the accounts for liquor sold to him, and this issue was submitted to a jury, which found in his favor. Upon the other accounts the court sustained a demurrer to the plaintiffs' evidence. Judgment was rendered for the defendant, from which the plaintiffs appeal.

(1) The controversy regarding payment depended upon what application was made of a remittance by the defendant. The defendant's claim was that he had directed that it should

be applied to the accounts for liquor sold to himself. The plaintiffs contended that no specific directions had been given and that application had been properly made upon the collection account. The court instructed on the law of the matter substantially as agreed to by the parties, and the verdict of the jury is conclusive upon this feature of the case, which is not affected by the legal questions hereinafter discussed. This part of the judgment is affirmed, and constitutes an adjudication that the remittance referred to should have been applied first to the personal account of the defendant for liquor purchased by him. If the plaintiffs should finally prevail upon the other branch of the case they would be entitled to a larger recovery thereon to the extent of the amount so applied.

(2) The demurrer to the plaintiff's evidence upon the other branch of the case was sustained upon the theory that the liquor dealers and the defendant were engaged in violating laws relating to the liquor traffic, that the collections made were the proceeds of such violation, and that the courts will not lend their aid to the apportionment of the profits of the illegal transaction. The claim assigned to the plaintiffs is of the same character in all respects as that which accrued to them originally, and a description of the circumstances out of which the latter grew will be sufficient. The plaintiffs, according to their evidence, were engaged in selling beer and whisky in Kansas City, Mo. They received a number of written orders from customers in Topeka. In each instance they shipped the liquor by freight to their own order, mailing the bill of lading to the defendant, with instructions to deliver it to the person who sent the order, upon payment of an accompanying draft for the price. This arrangement was made because the banks had refused to collect their drafts. The defendant's commission for his services varied with the class of goods, but averaged a little over twenty-five per cent of the collections.

If the resulting transactions amounted to the illegal sale of liquor in Kansas, or otherwise violated the penal laws of the state or nation, no recovery of the amount collected by the plaintiff can be had. There is a difference of judicial opinion on the question whether one who as the agent or partner of a wrongdoer participates in a contract in violation of law will be required to account to his principal or associate for any pro-

ceeds of it that have come into his hands.    (15 A. & E. Encycl. of L. 1009-1011; 9 Cyc. 557-560; Note, 113 Am. St. Rep. 732-734.)    But in this state the matter is settled by the decision in *Alexander v. Barker*, 64 Kan. 396, 67 Pac. 829, where it was said:

"The rule is that when persons enter into an illegal contract, and one of them receives the profits or other advantages arising therefrom, the courts will not compel him to account therefor, as in such case the right of the other to a share therein, or to the whole of it, if such were the agreement, would have to be based upon the illegal contract, and to permit him to recover it would be, in reality, an enforcement of the illegal scheme.   The law therefore leaves him where it finds him."    (p. 402.)

(3) The defendant suggests that even if the sale of the liquor is regarded as completed in Missouri, it must be treated as illegal because, although the plaintiffs pleaded that the law of that state permits such sales, no proof was offered on the subject, and in the absence of a showing to the contrary the court must presume statutes similar to our own to have been adopted there.    (*Bershears v. Nelson*, 80 Kan. 194, 101 Pac. 1011.)    The general denial of the answer can hardly be regarded as intended to assert that the sale of intoxicating liquors is forbidden by the laws of Missouri.    The trial court obviously did not put that construction on it or the entire case would have been taken from the jury.    The powers of this court on review have been broadened since the decision last cited, by a provision of the present code that "in any case pending before it the court shall render such final judgment as it deems that justice requires."    (Civ. Code, § 581; *Ratliff v. Railroad Co.*, 86 Kan. 938, 122 Pac. 1023.)    The policy of another state with respect to a matter of so much public interest as that relating to the control of the liquor traffic is so widely and generally known that it is hardly to be classed as falling within the ordinary presumption applied to local statutes.    The legal questions presented will be considered in the light of the known fact that Missouri is not a prohibition state.    However, if the sale was an integral part of an entire transaction in interstate commerce, it would seem to be protected against interference by either state.

(4) The defendant argues that as the plaintiffs shipped the liquor to their own order, and retained control of it until the delivery of the bill of lading, upon payment of the purchase

price, the title passed in Kansas, and the sales were made in this state and were therefore illegal. The Webb-Kenyon act (Part 1, 37 U. S. Stat. at Large, ch. 90, p. 699, 4 U. S. Comp. Stat. 1913, § 8739) has no bearing on the case, as it was passed after the claims sued upon had accrued. The Wilson act (26 U. S. Stat. at Large, ch. 728, p. 313, 4 U. S. Comp. Stat. 1913, § 8738) gives a state no power to forbid the shipping of intoxicating liquors by a nonresident seller to a resident purchaser, and its delivery to the latter upon his payment of the purchase price. The interstate character of the transaction is not controlled by the time the title passes or the property ceases to be at the risk of the seller (*American Express Co. v. Iowa,* 196 U. S. 133), nor by a legislative declaration that the place of delivery and payment shall be deemed the place of sale (*Adams Express Co. v. Kentucky,* 206 U. S. 129), nor by the fact that the seller has an agent on the ground through whom the delivery is made (*Caldwell v. North Carolina,* 187 U. S. 622). "The right to send liquors from one State into another, and the act of sending the same, is Interstate Commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and, hence, . . . a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States." (*Vance v. W. A. Vandercook Company,* 170 U. S. 438, 444. See, also, *Rossi v. Pennsylvania,* 238 U. S. 62.) The Wilson law gave to the state no jurisdiction over liquor shipped in from outside its boundaries, until a delivery to the consignee was effected. (*Heyman v. Southern Railway Co.,* 203 U. S. 270.) The state could not effectively forbid the making and carrying out of an agreement by the plaintiffs with a purchaser to cause liquor to be transported from Kansas City, Mo., to Topeka, and there delivered to him upon payment of the purchase price. But it does not follow that the methods adopted for the execution of such an arrangement are wholly beyond the reach of state legislation. The power given the state by the Wilson act to forbid the sale of intoxicating liquors, even in the original package, by one to whom they are sent in the course of interstate commerce, would be of little practical effect if the consignee could authorize their delivery by the carrier to some other person. To meet this situation the Kan-

sas legislature has enacted that one to whom intoxicating liquor has been consigned shall not give to any other person an order on the carrier for it, with the purpose of enabling him to receive it for himself, or for any one other than the consignee. (Gen. Stat. 1909, § 4398.) Here the liquor was not consigned to the purchaser, but to the order of the plaintiffs. Within the meaning of the act cited the plaintiffs were the consignees. By surrendering the bills of lading (presumably with their indorsement) they in effect gave an order on the carrier for the delivery of the liquor to a person to whom it was not consigned.

(5) The state may prevent the sale in interstate commerce of oleomargarine, harmless in itself, and a legitimate subject of trade, if it is colored in imitation of butter, so that it lends itself readily to the perpetration of a fraud. (*Plumley v. Massachusetts,* 155 U..S. 461.) And it may penalize the possession of game birds taken outside of the state, notwithstanding a restriction is thereby placed upon interstate commerce, where such a regulation is necessary to prevent the evasion of local game laws. (*Silz v. Hesterberg,* 211 U. S. 31.) It may also prohibit the sales of innocuous beverages, because to allow them to be legally sold would impede the enforcement of the laws against intoxicants, on account of the resemblance between them. (*Purity Extract Co. v. Lynch,* 226 U. S. 192.) By a parity of reasoning it should be held that in the exercise of its police power, in order to prevent a sale of liquor being made under color of a delivery to one who had already purchased it, the state may forbid a transfer by the person to whom it is consigned of the right to receive it from the carrier.

While the Wilson act does not give the local authorities absolute jurisdiction of intoxicating liquors shipped into the state until they are delivered to the consignee, it does affect the rights of the parties to an interstate transaction prior to such delivery. One engaged in interstate commerce may employ a solicitor in aid thereof, whose activities can not be restricted by state legislation. (*Robbins v. Shelby Taxing District,* 120 U. S. 489.) A dealer is declared to have a constitutional right, notwithstanding the Wilson act, to sell and ship liquor into another state to be delivered to the buyer for his

own use, free from state interference, a right which except for congressional action carried with it the incidental right to solicit such business within that state. And yet because of the Wilson act the state may punish the solicitors of such a dealer for taking within its boundaries orders for liquor to be filled in accordance with his constitutional privilege, one of the reasons given for this conclusion being that a contrary doctrine "would be repugnant to the plain spirit of the Wilson act." (*Delamater v. South Dakota*, 205 U. S. 93, 99.) We think it would be repugnant to the plain spirit of that statute to hold that the state has no power to prevent one who has shipped in liquor consigned to himself from giving an order to the carrier to deliver it to some one else. The protection that might be given the conduct in question as an act of interstate commerce is also restricted by the federal statute hereinafter referred to. We conclude that the arrangement entered into and carried out by the plaintiffs and the defendant was in violation of the laws of the state and that no recovery can be based upon it.

(6) The arrangement between the liquor dealers and their Topeka agent involved a violation of the act of congress including these provisions:

"Any railroad company, express company, or other common carrier, *or any other person* who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State . . . into any other State, . . . shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars." (Part 1, 35 U. S. Stat. at Large, ch. 321, § 239, p. 1136, 4 U. S. Comp. Stat. 1913, § 10,409.)

The defendant collected the purchase price of the liquor in connection with its transportation from Missouri to Kansas. His act was a step in the proceedings by which a transfer of the liquor was effected from the dealer to the purchaser. The interstate character of the transaction is not affected by the question as to when the title passed. But wherever the sale may be regarded as taking place, it was not completed so long as the shipper had the absolute control of the liquor. The transfer of the bill of lading was necessary to its completion. When the defendant collected a draft as a condition to the sur-

render of the bill of lading he acted as the agent of the seller for the purpose of completing the sale, otherwise than in the actual transfer and delivery of the liquor, and thereby violated the provision of the statute.

The judgment is affirmed.