No. 21,879.

B. L. TAFT et al., *Appellees,* V. WILLIAM S. HYATT, *Appellee,*
and THOMAS A. MURRAY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. REWARD — *Apprehension of Criminal — Conflicting Claimants of Reward—Proper Case for Bill of Interpleader.* Plaintiffs, who had offered a reward for the apprehension of a criminal, alleged that they were threatened with litigation by different parties claiming the reward; that some one or more of the defendants were entitled to receive it, and asked that defendants be required to set up their respective claims to the fund, which plaintiffs brought into court. *Held,* a proper case for an action in the nature of a bill of interpleader.

2. SAME—*Informant Whose Information Did Not Lead to the Arrest Not Entitled to Reward.* After the reward had been offered, an attorney at law was notified that the accused person desired to see him and was told where the latter could be found. Knowing of the offer of the reward, he went to the hiding place of the accused and talked with him for an hour and a half, but failing to agree upon a fee for defending him, went to the county attorney's office and arranged for the arrest of the accused person and then claimed the right to the reward. Before the officer to whom his information was conveyed arrived at the place where the accused had been, the latter, with the aid of friends, had surrendered himself to the chief of police, who took him to the county jail and placed him in the custody of the sheriff. *Held,* that, under the circumstances, the attorney is not entitled to the reward, and a judgment in his favor is reversed.

3. SAME—*Private Offer of Reward Not an Enforceable Contract until Accepted.* A private offer of reward for the apprehension of an accused person stands, as a general rule, upon a different footing from an offer made by virtue of a statute. When accepted, the offer becomes a contract; until it is accepted by some person, who upon the strength of the offer takes some steps to earn the reward, there is no contract; and where a claimant of the reward was not aware that it had been offered until after he had acted, he is not entitled to claim the reward.

4. SAME—*Chief of Police May Not Claim Reward for Performing His Official Duty.* A chief of police, whose duty it is to make an arrest of fugitives from justice or persons charged with or suspected of crimes, is not entitled to maintain an action to recover a reward offered by private individuals for the apprehension of the person, for the reason that public policy does not permit an officer to claim a reward for merely doing his duty. (*Thacker v. Smith,* 103 Kan. 641, 175 Pac. 983.)

5. SAME—*Interpleader Deposits Reward in Court—Evidence Shows No One Entitled to Receive It—Final Judgment Directed by Supreme Court.* In an action in the nature of a bill of interpleader to determine conflicting claims of defendants to a reward offered by the plaintiffs for the apprehension of a criminal, where the court finds in favor of one defendant and, on appeal, the judgment is reversed because public policy prevents some of the defendants from accepting the reward, and the other defendants are shown not to be entitled to receive it, this court has power to end the litigation (Civ. Code, § 581, Gen. Stat. 1915, § 7485), and will order the judgment reversed and the cause sent back with directions to render judgment against all the defendants, and after the costs have been paid, to return the balance of the money to the plaintiffs.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed April 12, 1919. Reversed.

*Archie D. Neale,* of Chetopa, for the appellants.

*W. D. Atkinson,* and *W. A. Disch,* both of Parsons, for appellees B. L. Taft et al..

*E. L. Burton, C. V. Rice,* and *William S. Hyatt,* all of Parsons, for appellee William S. Hyatt.

The opinion of the court was delivered by

PORTER, J.: The controversy is between rival claimants for a reward offered for the apprehension of a criminal. The suit is an equitable one instituted by the persons who offered the reward and who alleged that they were threatened with litigation by different parties claiming it; that one or more of the defendants were entitled to the money, which the plaintiffs brought into court; and asked that defendants be required to set up their respective claims.

On May 16, 1917, it became known in the city of Parsons that Agnes Smith, the wife of Dr. Asa Smith, had been assaulted, and that a negro physician by the name of Robert E. Smith was suspected of the crime. (The victim of the assault died, and Robert E. Smith was charged with and convicted of murder in the first degree. The judgment was affirmed. *The State v. Smith,* 103 Kan. 148, 174 Pac. 551.)

The plaintiffs are Dr. Asa Smith, husband of the murdered woman, and certain individuals who are members of the A. H. T. A. They caused to be published and circulated an offer of

$750 reward "for the arrest or information that will lead to" the arrest of the accused.

As to the claims of the defendant, William S. Hyatt, the findings of fact are, in substance, these: Hyatt is an attorney at law with an office in the city of Parsons. Another attorney notified him that R. E. Smith desired to see him, and told him where Smith could be found. During the afternoon of May 17, 1917, Hyatt went to the hiding place of the accused in the city of Parsons, in compliance with the directions that had been given him, and there found Smith. The two talked together for an hour or more, but were unable to reach an agreement as to the employment of Hyatt to defend Smith. There is a finding that the relation of attorney and client never existed between them at any time, and that Hyatt came away without being employed. Shortly before he went to see Smith, Hyatt learned that the reward had been offered, and after returning from his interview, he went to the office of the county attorney and told him where Smith could be found, and an arrangement was made to have the deputy sheriff go to the place for the purpose of arresting Smith. The deputy sheriff was called, and with Hyatt drove to the place where Smith had been left by Hyatt earlier in the afternoon, when they discovered that Smith was not there, but had been taken away by the other defendants. The court further found that Hyatt gave the first information to the proper officers which would lead to the arrest of Smith, after the offer of the reward had been made, and that the information was given more than an hour previous to the time Smith was removed by the other defendants from the house where he had been hiding; that Hyatt's purpose in giving the information to the county attorney and the deputy sheriff was to obtain the reward offered by the plaintiffs; and that the fact that Smith was not arrested from the information given by Hyatt was due to no fault or neglect of Hyatt. As a conclusion of law, the court held that Hyatt was entitled to the reward.

The findings with reference to the other claimants are, that Clarence Glass and Charles C. Edwards went to Thomas A. Murray, the chief of police of the city of Parsons, shortly after six o'clock on the afternoon of May 17, 1917, and requested Murray to go in a closed cab to a certain place in the city and

take charge of Smith and deliver him to the jail at Oswego. Murray complied with the request and went to the place directed, where he found the accused, together with the defendants Glass, Edwards, Tyson, Cook, and Ransom. All of them got into the cab with the chief of police, and the party went to Oswego, where Smith was delivered to the sheriff of Labette county. Before leaving Parsons, and just as the party got into the cab with the chief of police, the latter told the accused to consider himself under arrest, and informed him of the intention to deliver him at the county jail at Oswego. The evidence shows that the defendants who secured the services of the chief of police in taking the accused to Oswego were all members of the lodge of colored Masons to which the accused belonged. The court found that Smith expressed to them his fears of mob violence, and it was agreed that he would give himself into their custody, and they agreed to protect him; and that none of these defendants had heard of the offer of reward at the time they called Murray, the chief of police, to their assistance. Murray testified that he had heard of the reward before he arrested Smith, and that the reason he placed him under arrest and took him to Oswego was partly to earn the reward and partly to protect Smith from mob violence. The court found that it was the duty of Murray, as chief of police, to make arrest of fugitives from justice; that at the time of receiving Smith into custody Murray was not armed with a warrant or other process for the arrest; and that Smith had not committed any offense within the view of the chief of police.

The court found in favor of Hyatt and against the other defendants. The costs were directed to be paid out of the fund, and the balance of the $750 was ordered paid to Hyatt. The other defendants bring the case here for review.

Hyatt testified that he was informed by another attorney that Smith wanted to see him; that this occurred about half past eleven o'clock, and that between that time and four o'clock in the afternoon, while on his way to see the accused, he learned that a reward was offered—"a big reward"; that when he arrived at the place, Smith opened the door and told him to come in. "We had considerable conversation, lasting an hour and a half. I then went from the house and went to the county attorney's office" and told the county attorney "that I knew

where Doctor Smith was and wanted him arrested. I am a practicing attorney, and if proper arrangements could have been made by Doctor Smith I would have defended him." His testimony is that he did not arrange with Smith to defend him, and that they did not agree upon the fee to be paid for the defense; also that at the time he talked with the county attorney he claimed the right to the reward.

It is urged that it would be unconscionable to permit an attorney, under such circumstances, to avail himself of an offer of reward; that to do so would sanction conduct highly unprofessional in an attorney, and would permit him to obtain from one who occupies the position of a prospective client information which he uses to the other's prejudice and to gain a pecuniary benefit to himself. Without passing upon the question of the propriety of the conduct of an attorney in attempting to obtain a pecuniary advantage to the prejudice of an accused person under such circumstances, we think that Hyatt is not entitled to recover, because, from his own statement and the undisputed facts in evidence, his efforts to secure the apprehension of the accused were unavailing. The information which he gave to the officers did not result, even remotely, in bringing about the apprehension of the accused. The court found that the information Hyatt gave would have led to the arrest of the guilty person if it had been acted upon promptly, and the fact that it did not bring about this result was through no fault of Hyatt's; but this finding does not help Hyatt's case. It may have been that the officers to whom he confided his information were too slow; whatever the reason, before any action was taken by them which resulted in apprehending the accused, the latter was on his way to the county jail in the custody of another officer, having, with the aid of his friends, surrendered himself. So far as the apprehension of the guilty person was concerned, Hyatt might as well have kept his information to himself.

The defendants who admit that they had not heard of the offer of the reward until after the accused had been surrendered to the sheriff at Oswego, are not entitled to recover. A private offer of reward for the apprehension of a fugitive from justice or of a person suspected or charged with an offense stands, as a general rule, upon a different footing from a statu-

tory offer, or one made by virtue of a statute. (34 Cyc. 1752, 1753, and cases cited in notes.) The offer of a private individual is a mere proposal which, when accepted, becomes a contract. Until it is accepted by some person who, upon the strength of the offer, takes some steps to earn the reward, there is no contract. (*Van Vlissingen v. Manning,* 105 Ill. App. 255.) There must be a meeting of the minds of the parties; on the one side, of the person who makes the offer; on the other, of the person who performs the service. Where a claimant for the reward was not aware that it had been offered until after he had performed his services, there has been no meeting of minds which would constitute a contract. Besides, the undisputed facts with respect to those defendants who called the chief of police to assist them in taking the accused to Oswego are, that these claimants were simply assisting the accused in surrendering himself. Their testimony is that what they did was for the purpose of protecting him from mob violence. They had never heard of the reward, and, of course, are not entitled to any part of it.

Thomas A. Murray cannot recover, because, as chief of police of the city of Parsons, it was his duty to make an arrest of fugitives from justice or persons charged with or suspected of crimes. The fact that he was not armed with a warrant or other process for the arrest of the accused is immaterial, because there was reasonable ground for believing that Smith had committed the particular offense charged against him, and his subsequent conviction established his actual guilt. (*Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005; *Railway Co. v. Hindsell,* 76 Kan. 74, 76, 90 Pac. 800.) In the latter case it is said, "There was sufficient evidence to support a finding, not only of the existence of probable cause to believe the plaintiff guilty of grand larceny, but of his actual guilt. In either case the absence of a warrant was unimportant." See, also, *Smith v. Hern,* 102 Kan. 373, 170 Pac. 990, where it was held that an officer may arrest a person without a warrant where he has reasonable grounds to believe that a felony has been committed by the person arrested.

It has been repeatedly held that public policy does not permit an officer to claim a reward for merely doing his duty. (*Elkins v. Wyandotte County,* 91 Kan. 518, 520, 138 Pac. 578.)

Taft v. Hyatt.

The question as applied to a claim for reward is discussed in the opinion in *Smith v. Fenner*, 102 Kan. 830, 172 Pac. 514. (See, also, *Marsh v. Express Co.*, 88 Kan. 538, 129 Pac. 168, and authorities there cited.) In the recent case of *Thacker v. Smith*, 103 Kan. 641, 175 Pac. 983, it was held that a deputy sheriff could not lawfully receive any part of such a reward, and, also, that others who had acted with him under a division agreement were not entitled to recover, because the agreement itself was void and inseparable. In some of the cited cases, what are called "nonpay officers" were permitted to recover because it was not their duty to cause the arrest.

None of the defendants being entitled to any part of the reward, the question arises: What should be done with the judgment? The plaintiffs have not appealed from the judgment. Their attorney has filed a brief in which it is urged that none of the defendants are entitled to the reward. The defendants objected to the attorney for plaintiffs cross-examining the witnesses at the trial, and complain that their objections were overruled. They likewise contend that the plaintiffs have no right to be heard in this court, because no appeal was taken, and that, having paid the money into court and alleged that some of the defendants are entitled to the fund, plaintiffs ought to be estopped from claiming, either in the court below or here, that the defendants are not entitled to recover.

Since 1874, at least, it has been settled that a suit in the nature of a bill of interpleader may be maintained under our procedure "whenever a proper case is made therefor." (*Board of Education v. Scoville*, 13 Kan. 17.) The present case is a proper one for maintaining such an action. The petition alleges, and the evidence and findings show, that plaintiffs were threatened with litigation by the defendants, and were unable to determine to which of defendants the money should be rightfully paid. It is true that strictness in pleading requires the plaintiff in such an action to allege that he claims no interest in the fund and to take the position of a mere stakeholder. (23 Cyc. 5, 6, and cases cited in Note; 23 id. 30, and cases cited.) And when he pays the fund into court he may ordinarily walk out of court and leave the controversy between the conflicting claimants to be determined by the court, without troubling himself about the result or the costs of the proceeding. (23 Cyc. 33.) The plaintiffs' offer of the reward was

made in good faith. Doubtless, they believed when their suit was filed that the purpose for which the offer was made had been fully accomplished because of the performance of the conditions of the reward by some one or more of the defendants. The criminal had been brought to justice and convicted. It is apparent that when the suit was filed the plaintiffs were not aware of the fact that public policy prevented some of the defendants from accepting any part of the reward, and that the other defendants had done nothing that entitled them to receive it. The code requires that this court in any case before it "shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken." (Civ. Code, § 581; Gen. Stat. 1915, § 7485.) It has been held that this section enlarges the power of the supreme court to end litigation on appeal. (*Robinson v. Railway Co.*, 96 Kan. 137, 144, 150 Pac. 636; *Danciger v. Cooley*, 98 Kan. 38, 157 Pac. 453.)

Inasmuch as none of the defendants is entitled to recover any part of the reward, we think it would be a harsh rule to say that the plaintiffs are estopped from claiming it because of the admissions in their petition. In our view of the matter, justice requires that the trial court be directed to render judgment against all of the defendants, and that the plaintiffs, after paying the costs of the proceeding, be entitled to the return of the money.

The judgment is reversed, and the cause is remanded with directions to carry this order into effect.

---

OPINION DENYING A REHEARING.

(Filed June 7, 1919.)

In a motion for rehearing it is insisted, first, that all that was said in the opinion with reference to an offer of reward by private individuals is outside the case, because it is urged that in this case the offer was a public one. It was signed by the husband of the murdered woman, and also by B. L. Taft, who described himself as president sub-order 62, A. H. T. A., and by J. W. Elam, who described himself as sheriff of Labette county. There was no suggestion in the record anywhere that the sheriff had authority to make the offer as an official, or to

bind the county, and the contention now urged has no merit. There was nothing to show that B. L. Taft had authority to bind the association, of which he was president, but if, in fact, the offer had been made by the association, it would still be a private, and not a public, offer.

Because we held that Murray, chief of police, was not entitled to the reward, on the ground that he acted in the performance of his official duties, it is seriously contended that the decision is unsound, unless the court shall first decide whether the accused would have been guilty of murder if he had resisted arrest, and had killed the chief of police; that unless Murray would have had the same protection as if armed with a warrant, it was not his duty to make the arrest and, therefore, he is entitled to the reward. It is urged that this contention was presented in the brief, and that appellees have the right to insist that it be decided.

We cannot agree with counsel that every contention made in their argument must be followed out and decided. Upon the facts stated with much detail in the opinion, we held that all the chief of police did was done in the discharge of his official duty. He knew that a crime had been committed; he had seen the offer of reward which described Smith as the accused person; he had been requested by Smith's friends to go to the place where Smith was and take charge of him; and he knew that Smith wished to surrender himself for protection from mob violence. In our opinion, it is absurd to argue that Murray, under those circumstances, had no duty to perform as chief of police, or that it was not his duty to take charge of Smith and convey him to a place of safety. If the officer had no duty to perform and no authority to do anything until a warrant issued, the mob might have acted while he was seeking to obtain a warrant; besides, an officer authorized to make an arrest with a warrant needs none where the person he takes charge of surrenders himself. Whatever the chief of police did in the matter was done as a police official.

Among other matters argued, but which have no proper place in a motion for rehearing, is a complaint of a decision adverse to counsel in another case not even remotely related to the present case.

Rehearing denied.