ARKANSAS BANKERS' ASSOCIATION *v.* LIGON.

Opinion delivered May 30, 1927.

1. REWARDS—RIGHT OF RECOVERY.—The right to recover a reward arises out of the contractual relation which exists between the person offering the reward and the claimant, which is implied by law by reason of the offer on one hand and the performance of the service on the other; the reason of the rule being that the services of the claimant are rendered in consequence of the offered reward.

2. REWARDS—ISSUE AS TO LIABILITY.—In an action to recover a reward for procuring the arrest and conviction of a bank burglar,

the issue as to whether or not plaintiff, in procuring the burglar's arrest and conviction, was actuated by the offer of a reward, *held* raised by defendants' general denial of liability and by plaintiff's undisputed testimony although not specifically raised by the pleadings.

3.  PLEADING—AMENDMENT OF COMPLAINT TO CONFORM TO PROOF.—Where the issue as to whether plaintiff in procuring a burglar's arrest was actuated by the offer of a reward was not specifically raised by the pleadings, but was raised by plaintiff's undisputed testimony, the chancery court should have treated the pleadings as amended to correspond with the evidence.

4.  `APPEAL AND ERROR.—On appeal chancery cases are tried in the Supreme Court *de novo* on the record made up in the lower court.

Appeal from Pike Chancery Court; *C. E. Johnson,* Chancellor; reversed.

*Will G. Akers,* for appellant.

*Tom Kidd,* for appellee.

WOOD, J.   This is an action by the plaintiff, Ligon, against the defendants, Special Protective Rewards Committee of the Arkansas Bankers' Association and Arkansas Bankers' Association, to recover a reward.

The plaintiff alleged that the defendants offered a reward of $500 for the arrest and conviction of any person "burglarizing by forcible and violent breaking and entry, or attempt to burglarize by forcible and violent breaking and entry, or of robbing or attempting to rob, any member of the Arkansas Bankers' Association." The plaintiff alleged that the Bank of Glenwood, at Glenwood, Pike County, Arkansas, was a member of the Bankers' Association and the rewards committee on the 12th of March, 1925; that on that day Hadley Babbitt did burglarize by forcibly and violently breaking and entering the building occupied by the Bank of Glenwood, with the intent to commit a felony, and did then and there commit burglary and grand larceny by breaking and entering the building occupied by the Bank of Glenwood and carrying away the sum of $65. Plaintiff alleged that he arrested Babbitt as he came out of the bank building and delivered him to the city marshal at

Glenwood; that he was afterwards convicted in the juvenile court, and is held as a ward of that court. The plaintiff alleged that he made the arrest as a private citizen, and had complied with the terms of the offer of the reward, and that the defendants had failed and refused to pay the same, for which plaintiff prayed judgment.

The defendants answered, and admitted all the allegations of the complaint as to the offer by the defendants of a reward and of the burglary and grand larceny by Babbitt, and of his arrest and conviction, but denied that the plaintiff was entitled to the reward, because of the following facts: The said Hadley Babbitt is a minor under the age of eighteen years. At and before the time when the said Hadley Babbitt began the aforesaid forcible breaking and entry of the building in which the Bank of Glenwood was situate, plaintiff was watching said Hadley Babbitt, and saw and observed each and all of the acts and things done and committed by the said Hadley Babbitt during and immediately before the forcible breaking and entry, and the said plaintiff could, without effort or danger, have prevented both the breaking and the entry of the building; but, notwithstanding the fact that he could have thus prevented the commission of the crime, he failed and refused so to do. On the contrary, he continued to watch and observe the said Hadley Babbitt throughout the entire time during which the latter was committing the breaking, entry and exit, and, after the breaking, the entry and the exit had all been effected under plaintiff's observation as aforesaid, plaintiff captured Hadley Babbitt and delivered him to the city marshal of Glenwood. The defendants are informed and believe, and therefore allege, that at all times herein mentioned plaintiff was acquainted with the terms of the notice by which the Special Protective Rewards Committee offers rewards for the capture and conviction of persons burglarizing member banks, and that his failure to take any steps toward the prevention of the commission by the said Hadley Babbitt of the aforementioned crime was due to his desire to collect a

reward from these defendants. By reason of the facts above set out, plaintiff constituted himself an accessory before the fact to the crime committed by the said Hadley Babbitt, and he is not entitled to receive or collect a reward in any amount whatsoever from either of these defendants.

The cause was begun in the circuit court and was, by consent of parties, transferred to the chancery court.

The plaintiff testified in his own behalf, substantially as follows: He had been living in the vicinity of Glenwood for fifteen years. He had been acquainted with Hadley Babbitt for about seven or eight years. Witness was working in a hardware store in the town of Glenwood, about 100 feet or more from the Bank of Glenwood. On the 12th of March, 1925, witness saw Hadley Babbitt on the sidewalk which passes along by the bank building. It was between 12 and one o'clock. His attention was called to Babbitt by D. M. Caldwell, who was standing in the door of the hardware store where witness was working. Caldwell called witness' attention to the fact that some one was in the bank building, and witness went down to the bank to arrest him. Witness stopped at the window and saw Babbitt get some money out of the till of the bank and put it in his pocket. Babbitt had entered the building by raising a window at the rear of the bank. He had gone up a stairway and removed a screen and entered the bank through a window. Witness stepped up to a window to see what Babbitt was doing. Witness went to the place where Babbitt entered the bank, and Babbitt, who was then coming toward the window, saw the witness standing there waiting for him, stopped, and backed himself up in a corner of the building. Witness then went to the side door, and Babbitt unlocked the door and came out. Witness took charge of him and delivered him to the town marshal, and told the marshal what Babbitt had done. After Babbitt had procured the money he started to go out the same way he came in, and, when he saw witness, he hid himself in the directors' room. Then the witness went around, and,

when Babbitt saw him standing at the door, he unlocked the door and came out, and witness took charge of him. Witness told the officers where he saw the boy hide himself in the bank, and they searched that place for money and found $21 in pigeonholes and one place and another. Babbitt was convicted of the robbery of the Bank of Glenwood in the Pike Circuit Court, the crime for which witness had arrested him. At the time witness arrested Babbitt witness did not know that there was a reward offered for him. Witness made the arrest because he thought it was his duty as a citizen for the benefit of the bank and the town. Witness appeared before the grand jury as a witness against Babbitt for the crime.

On cross-examination the witness described the situation of the store building from which he first saw Babbitt and the bank building which he afterwards saw Babbitt enter. When he first saw Babbitt he was just walking up and down along the sidewalk. It was probably a minute from the time witness first saw him on the sidewalk until the time he first saw him lift the screen. While he was lifting the screen he sat down on the steps of a stairway on the outside of the building. It was Babbitt's peculiar actions that first attracted the attention of witness and Caldwell. When witness first saw Babbitt there was no one in the bank. The officers and employees had gone to lunch. Witness watched Babbitt from the time he first saw him until a customer came in, and witness went to wait on the customer. Witness had had an account at the bank for several years, and was in and out of the bank frequently. He made his deposit at the teller's window, just as other customers. After witness' attention was called to Babbitt's peculiar action, witness wanted to see what he was going to do if he entered the bank. If there was anything wrong with the boy, witness wanted to know it. Witness and Caldwell were standing there watching him, and said, "We will just see what he is going to do." Then witness went back in the store to wait on a customer. Witness did not know exactly what Babbitt's purpose was in walking

up and down the sidewalk and opening the window, but his conduct looked out of the ordinary, and it was for that reason that witness watched him. His actions were suspicious. If witness had not been practically certain that Babbitt's purpose was evil, he would not have watched him. Witness did not know what Babbitt's occupation was. Witness thought Babbitt was seventeen years old. Witness did not think that he was a janitor in the bank. When witness observed Babbitt's suspicious conduct, he might have called his attention, but witness did not know but what he would have been butting in where he had no business, and did not do so. Witness went on and waited on the customer. Witness did not know what Babbitt was going to do, and therefore did not feel like it was his duty to get out there and holler at him. Witness had known Babbitt and his parents for many years. Witness and Babbitt's father were young men together—had grown up in neighboring settlements. Babbitt's family were customers of the witness. After witness had finished waiting on his customer, and went to the bank to see what Babbitt was doing, he did not call to Babbitt when he saw him reaching into the till to get the money, but stepped around to a position where witness could arrest him as he came out. Witness thought that was the thing for him to do. Witness was not in the bank, the doors were locked, and witness thought the safest plan was for him to catch Babbitt as he came out of the bank. Witness probably could have stopped Babbitt before, but did not do so. Witness was first informed, that day or the next, about the offer of the reward made by the Bankers' Association. Witness had never noticed the offer of reward that had been posted in the window of the bank. He did not know it was there. After it all happened and witness was informed of the reward, witness made this statement: "If the Bankers' Association publishes a reward for a thing of that kind, if I was entitled to it, I just as well have it as not, otherwise I would not ask for it."

Witness went to the prosecuting attorney and told him about it, not altogether for the purpose of getting the reward. Witness felt that the laws ought to be enforced, and, if Babbitt had broken the law, he should be punished for it. If witness was entitled to the reward, he had just as well have it as not. Witness went to both the judge and prosecuting attorney and talked to them about it. After witness was informed about the reward he knew that it was necessary to have Babbitt indicted and convicted in order to obtain the reward.

The testimony of the witness Caldwell corroborated the testimony of the plaintiff in regard to the manner in which Babbitt entered the bank on March 12, 1925. He stated that he called plaintiff's attention to the boy at the particular moment when Babbitt was sitting on the steps with his arm under the window. That a customer came into the hardware store, and Ligon waited on him and then came out. While Ligon was gone to wait on his customer, Babbitt entered the bank through the window. Witness then went to where Mr. Ligon was, and told him that the boy had gone into the bank. Mr. Ligon then went over to the bank, and was standing near the door on the north side when the boy came out. Ligon said something to the boy, and came back with him and turned him over to the marshal of the town. It was Babbitt's peculiar and suspicious actions which caused witness to direct the attention of Mr. Ligon to him. Witness thought that he intended to enter the building through the window. Neither Ligon or witness said anything to the boy while they were watching his actions. After Mr. Ligon went over to the bank he stood there at the window only a few minutes, then walked around to the door, and was there when the boy came out.

McF. Gibbs testified that he had been an officer of the Bank of Glenwood for the past seven years. During all that time the bank had been a member of the Arkansas Bankers' Association and a party to the special protective rewards agreement. There had always been on display in the bank in a prominent position a placard

or card setting forth the special protective rewards committee's offer of reward for the arrest and conviction of persons burglarizing member banks. This placard was by the front paying teller's window, the window to which depositors came to make deposits and at which were presented checks for payment. It was the window through which 90 per cent. of the bank's business is transacted. The placard faces so that any one 'walking in at the door of the bank and up to the window sees it. No one can help seeing it. The placard sets forth, in heavy black-faced type, the offer of the rewards committee to pay rewards for the capture and conviction of persons robbing member banks. Babbitt had never been employed by the bank in any capacity whatsoever. The next day after the commission of the crime by Babbitt, his father had made good the loss. On account of the boy's youth neither the bank nor its officers pushed any prosecution against him. The bank had nothing to do with the prosecution. Witness was subpoenaed before the grand jury as a witness.

The trial court found, upon the above facts, that the plaintiff was entitled to recover a reward of $500, and entered a decree in favor of the plaintiff against the defendants for that sum, from which is this appeal.

1. The theory upon which the rewards are recoverable, when offered by individuals or corporations, is that in some manner a contract relation exists between the one offering the reward and the one claiming the same. Before recovery can be had in any action for reward, the facts must be such as to justify the conclusion that the plaintiff or person who claims the reward is entitled thereto because he has performed the services for which the reward was offered on the faith of the offer of such reward. While there is a sharp conflict in the authorities, both the better reason and the weight of authority is in favor of the above doctrine. The rule and the reason for it is well stated by Judge Hand, speaking for the Supreme Court of Illinois, in *Williams* v.

*West Chicago Street Ry. Co.*, 191 Ill. 610, 61 N. E. 456. 85 Am. State Rep. 278, as follows:

"The right to recover a reward arises out of the contractual relation which exists between the person offering the reward and the claimant, which is implied by law by reason of the offer on the one hand and the performance of the service on the other, the reason of the rule being that the services of the claimant are rendered in consequence of the offered reward, from which an implied promise is raised on the part of the person offering the reward to pay him the amount thereof by reason of the performance by him of such service, and no such promise can be implied unless he knew at the time of the performance of the service that the reward had been offered, and in consideration thereof, and with a view to earning the same, rendered the service specified in such offer."

See other authorities there cited.   See also 23 R. C. L., page 1115 *et seq.*, particularly §§ 3 and 6; 34 Cyc. page 1730, § 1 (a) and page 1751, § 6, and authorities cited in notes; also note to *Board of Commissioners of Clinton County* v. *Davis,* 162 Ind. 60, 69 N. E. 680, 64 L. R. A. 780, 1 Ann. Cas. page 282, 285, and cases there cited.

A well reasoned case, where the authorities *pro* and *con* are cited and reviewed, is that of *Broadnax* v. *Ledbetter,* 99 S. W. 1111, 9 L. R. A. (N. S.) 1905, 100 Tex. 375, in which Judge Williams, speaking for the Supreme Court of Texas, among other things said:

"The liability for a reward of this kind must be created, if at all, by contract.   There is no rule of law which imposes it except that which enforces contracts voluntarily entered into.   A mere offer or promise to pay does not give rise to a contract.   That requires the assent or meeting of two minds, and therefore is not complete until the offer is accepted.   Such an offer as that alleged may be accepted by any one who performs the service called for when the acceptor knows that it has been made and acts in performance of it, but not otherwise.   He may do such things as are specified in

the offer, but, in so doing, does not act in performance of it, and therefore does not accept it when he is ignorant of its having been made.  There is no such mutual agreement of minds as is essential to a contract.  *    *    *  The mere doing of the specified things without reference to the offer is not the consideration for which it calls. This is the theory of the authorities which we regard as sound."   See authorities there cited.

There are certain well recognized exceptions to the above rule which are mentioned in the authorities, but which it is unnecessary for us to refer to here, because this case does not come within any of them.

The undisputed testimony of the appellee himself shows that the services he performed in the arrest of young Babbitt were without reference to the offer of reward.   Among other things he stated:  "My purpose was not any money interest, but rather interest in the enforcement of the laws of the country.   Dr. Pate called my attention that appellants offered a reward for conviction of a person for such a crime.   I appeared before the grand jury and was a witness in the case."   While the witness further stated that he talked with both the prosecuting attorney and the circuit judge, he does not make it clear that his actions in the premises were for the purpose of obtaining the reward.   On the contrary, giving the testimony of the appellee its strongest probative force in his favor, it tends to prove that he was actuated, at least primarily, for the enforcement of the laws and not for the obtaining of the reward.

2.   Learned counsel for appellee, however, insists that a lack of knowledge on the part of the appellee of the offer of the reward cannot avail the appellants, because this was not made an issue in the court below. While the pleadings do not specifically raise this issue, it was raised on the general issue by the appellee setting out the terms of the offer of reward and claiming that he was entitled to the reward, and that the defendants had failed and refused to pay him, and the denial by the defendants that they were liable to the appellee.   If

the issue was not thus raised by the pleadings, certainly the undisputed testimony of the appellee raised it, and the court, in the consideration of the case, should have treated the pleadings as amended to correspond with the undisputed testimony, and thus should have considered the issue as to the liability or non-liability of the appellants on the uncontroverted proof. It must be remembered that this was not a trial at law before a jury, or the judge sitting as a jury, but a trial by the chancery court. On appeal chancery causes are tried· in this court *de novo* on the record made up in the lower court. The law and the facts are examined the same as if there had been no decision at *nisi prius,* and this court renders its decree based upon such record. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160, and cases there cited.

Applying the principles of law as above announced to the undisputed facts of this record, it follows that the decree of the trial court must be reversed, and a decree will be entered here dismissing the appellee's complaint for want of equity. It is so ordered.  ·

MEHAFFY and SMITH, JJ., dissent.

### DISSENTING OPINION.

MEHAFFY, J.  I cannot give my assent to the conclusions reached by the majority, and I think it proper to give the reasons for my dissent. The majority opinion states that the theory upon which rewards are recoverable when offered by individuals or corporations is that in some manner a contract relation exists between the one offering the reward and the one claiming the same. The opinion states that, ''before a recovery can be had in an action for a reward, the facts must be such as to justify the conclusion that the plaintiff or person who claims the reward is entitled thereto because he has performed the services for which the reward was offered on the faith of the offer of such reward.''

The effect of this is, in my opinion, to hold that, although a person might arrest and secure the conviction of the most dangerous criminal in the country for whose arrest and conviction a reward had been offered,

and the fact that he did not know, at the time he made the arrest, either that a reward was offered, or, if he did know that, did not know that the person arrested by him was the one for whom the reward was offered, the failure to know either of these facts, according to the opinion of the majority, would disentitle the person making the arrest to receive the reward.

My view is that, when a person or corporation offers a reward in good faith for the arrest and conviction of a criminal, whoever secures the arrest and conviction of the person for whom the reward is offered is entitled to the reward. Certainly the one offering the reward secures that for which the reward was offered, and therefore should be required to pay. If he offers the reward in good faith it cannot be material to him who makes the arrest and secures the conviction, nor whether he knows there was a reward offered, or knows the person to be the man for whom reward was offered when he arrested him. If the reward is offered in good faith, the purpose is to secure the arrest and conviction of the criminal, and, if that is accomplished, the person offering the reward should be required to pay.

The Supreme Court of Indiana said:

"The second paragraph of the answer shows a performance of the service without the knowledge that the reward had been offered. The offer therefore did not induce the plaintiff to act. The liability to pay a reward offered seems to rest, in some cases, upon an anomalous doctrine, constituting an exception to the general rule. In *Williams* v. *Carwardine,* 4 Barn. & Adolph. 621, there was a special finding, with a general verdict for the plaintiff, that the information for which the reward was offered was not induced to be given by the offer, yet it was held by all the judges of the King's Bench then present, Denman, C. J., and Littledale, Parke and Patteson, JJ., that the plaintiff was entitled to judgment. It was put upon the ground that the offer was a general promise to any person who would give the information sought; that the plaintiff, having given the information,

was within the terms of the offer, and that the court could not go into the plaintiff's motives. This decision has not, we believe, been seriously questioned, and its reasoning is conclusive against the sufficiency of the defense under examination. There are some considerations of morality and public policy which strongly tend to support the judgment in the case cited. If the offer was made in good faith, why should the defendant inquire whether the plaintiff knew that it had been made? Would the benefit to him be diminished by the discovery that the plaintiff, instead of acting from mercenary motives, had been impelled solely by a desire to prevent the larceny from being profitable to the person who had committed it? Is it not well that any one, who has an opportunity to prevent the success of a crime, may know that by doing so he not only performs a virtuous service, but also entitles himself to whatever reward has been offered therefor to the public? *Dawkins* v. *Sappington,* 25 Ind. 199.

"In a case in Indiana the president of a corporation offered a reward for books that had disappeared. The books disappeared during an inquiry under circumstances that led the president of the corporation to believe that he was under suspicion. He had offered rewards privately, but, when he was on the witness stand, he was asked this question: "You never publicly gave notice of a reward for the discovery of the books?" He answered: "No; I will offer it now, if that is public enough." Some days later the books were found by appellee, who delivered them to appellant, and at his request appeared in court, and explained the circumstances of their finding. She did not at the time know of appellant's statement in court, and, shortly before or after the books were delivered to appellant, he sent appellee $5, and, at the time she received it, she did not know of the alleged offer of a reward. On learning it, she requested payment of the balance, and, on its refusal, brought this suit.

"Appellant's position is that he only made the offer for the day and the time of the hearing, and that he was

not interested in the books. The evidence, however, is that it was not so much the actual presence of the books in which appellant was interested as in clearing himself from any imputation of responsibility for their disappearance. That being true, the position here taken is inconsistent with the conditions then existing. * * * Any secret intention he may have had will not be let in to show an intent different from that expressed. * * * It is immaterial, under the rule in this State, that appellee did not know of the reward when she found and returned the books." *Sullivan* v. *Phillips*, 178 Ind. 164, 98 N. E. 868, Ann. Cas. 1915D, 670.

The court in the above case cites many authorities supporting the rule announced by it. Several courts have held that, where the Legislature passed a law authorizing the Governor to offer a reward and the reward was offered, notice or knowledge of the reward being offered was not necessary to entitle a person to claim the reward. Among the cases so holding may be cited *Smith* v. *State of Nevada*, L. R. A. 1916A, 1276; *Board of Commissioners of Clinton County* v. *Davis*, 162 Ind. 60, 69 N. E. 680, 1 Ann. Cas. 282, 64 L. R. A. 780; and there are many other cases that might be cited.

It may be true that a majority of the cases where rewards are offered by private individuals hold that a person cannot recover the reward unless he knew of its offer, but I think that does not necessarily mean that the weight of authority or reason supports this rule. The purpose of the Governor offering the reward authorized by statute is precisely the same as the purpose of an individual who offers a reward, and the Attorney General of the United States, in speaking of the claim to a recovery and reward, said:

"The purpose of a reward is, of course, to stimulate persons to make an arrest, and, while knowledge thereof is essential to effect that purpose, still, if the offer be a general promise to any one, made by a public officer, as in the case at bar, the motive of the person making such arrest cannot be inquired into. The arrest itself is con-

clusive of the motives which prompted it." *Smith* v. *State, supra.*

"There are some authorities holding that knowledge of a reward is essential to recovery, but we think the weight of authority is as we have stated, especially where the reward has been offered by a public officer with authority, as in the case at bar." *Drummond* v. *U. S.,* 35 Ct. Cl. 356-372.

It has been said:

"One who offers a reward for the performance of a certain service may prescribe any terms he may wish, but, as experience has shown that many persons are profuse in their promises and slow in meeting them, and are inclined to take advantage of mere technicalities in order to avoid carrying out their end of the agreement, courts have often, as in *Elkings* v. *Wyandotte County,* held that substantial compliance with the terms is sufficient, especially where a literal compliance would be impossible." *Smith* v. *State, supra.*

I think the judgment should be affirmed. Mr. Justice SMITH agrees with me in the views herein expressed.