## GLOVER v. JEWISH WAR VETERANS OF UNITED STATES, POST NO. 58.

### No. 830.

Municipal Court of Appeals for the District of Columbia.

Argued July 18, 1949.

Decided Aug. 10, 1949.

John G. Saul, Washington, D. C., for appellant.

David L. Blanken, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The issue determinative of this appeal is whether a person giving information leading to the arrest of a murderer without any knowledge that a reward has been offered for such information by a non-governmental organization is entitled to collect the reward. The trial court decided the question in the negative and instructed the jury to return a verdict for defendant. Claimant appeals from the judgment on such instructed verdict.

The controversy grows out of the murder on June 5, 1946, of Maurice L. Bernstein, a local pharmacist. The following day, June 6, Post No. 58, Jewish War Veterans of the United States, communicated to the news-

papers an offer of a reward of $500 "to the person or persons furnishing information resulting in the apprehension and conviction of the persons guilty of the murder of Maurice L. Bernstein." Notice of the reward was published in the newspaper June 7. A day or so later Jesse James Patton, one of the men suspected of the crime, was arrested and the police received information that the other murderer was Reginald Wheeler and that Wheeler was the "boy friend" of a daughter of Mary Glover, plaintiff and claimant in the present case. On the evening of June 11 the police visited Mary Glover, who in answer to questions informed them that her daughter and Wheeler had left the city on June 5. She told the officers she didn't know exactly where the couple had gone, whereupon the officers asked for names of relatives whom the daughter might be visiting. In response to such questions she gave the names and addresses of several relatives, including one at Ridge Spring, South Carolina, which was the first place visited by the officers and where Wheeler was arrested in company with plaintiff's daughter on June 13. Wheeler and Patton were subsequently convicted of the crime.

Claimant's most significant testimony, in the view that we take of the case, was that she first learned that a reward had been offered on June 12, the day after she had given the police officers the information which enabled them to find Wheeler. Claimant's husband, who was present during the interview with the police officers, also testified that at the time of the interview he didn't know that any reward had been offered for Wheeler's arrest, that nothing was said by the police officers about a reward and that he didn't know about it "until we looked into the paper about two or three days after that."

■ We have concluded that the trial court correctly instructed the jury to return a verdict for defendant. While there is some conflict in the decided cases on the subject of rewards, most of such conflict has to do with rewards offered by governmental officers and agencies. So far as rewards offered by private individuals and organizations are concerned, there is little conflict on the rule that questions regarding such rewards are to be based upon the law of contracts.[1]

Since it is clear that the question is one of contract law, it follows that, at least so far as private rewards are concerned, there can be no contract unless the claimant when giving the desired information knew of the offer of the reward and acted with the intention of accepting such offer; otherwise the claimant gives the information not in the expectation of receiving a reward but rather out of a sense of public duty or other motive unconnected with the reward. "In the nature of the case," according to Professor Williston, "it is impossible for an offeree actually to assent to an offer unless he knows of its existence."[2] After stating that courts in some jurisdictions have decided to the contrary, Williston adds, "It is impossible, however, to find in such a case [that is, in a case holding to the contrary] the elements generally held in England and America necessary for the formation of a contract. If it is clear the offeror intended to pay for the service, it is equally certain that the person rendering the service performed it voluntarily and not in return for a promise to pay. If one person expects to buy, and the other to give, there can hardly be found mutual assent. These views are supported by the great weight of authority, and in most jurisdictions a plaintiff in the sort of case under discussion is denied recovery."

■ The American Law Institute in its Restatement of the Law of Contracts follows the same rule, thus: "It is impossible that there should be an acceptance unless the offeree knows of the existence of the offer." The Restatement gives the following illustration of the rule just stated: "A offers a reward for information leading to the arrest and conviction of a criminal. B, in ignorance of the offer, gives information leading to his arrest and later, with knowledge of the offer and intent to accept it, gives other information necessary for conviction. There is no contract."[3]

[1] 46 Am.Jur., Rewards, § 11; 23 R.C.L., Rewards, § 3, p. 1115.

[2] 1 Williston, Contracts, (rev. ed.) § 33.

[3] 1 Restatement, Contracts, § 53. See also: ibid., § 55; Reynolds v. Eagle Pencil Co., 285 N.Y. 448, 35 N.E.2d 35, rehearing denied 286 N.Y. 607, 35 N.E.2d

We have considered the reasoning in state decisions following the contrary rule. Mostly, as we have said, they involve rewards offered by governmental bodies and in general are based upon the theory that the government is benefited equally whether or not the claimant gives the information with knowledge of the reward and that therefore the government should pay in any event.[4] We believe that the rule adopted by Professor Williston and the Restatement and in the majority of the cases is the better reasoned rule and therefore we adopt it. We believe furthermore that this rule is particularly applicable in the present case since the claimant did not herself contact the authorities and volunteer information but gave the information only upon questioning by the police officers and did not claim any knowledge of the guilt or innocence of the criminal but only knew where he probably could be located.

While claimant's appeal is based primarily upon her position that knowledge of the offer of the reward was not necessary at the time she gave information about Wheeler's possible whereabouts, she makes several other assignments of error. The first is that after the jury had been accepted by both counsel and after it had been sworn claimant's counsel asked that two members of the jury be excused because during the examination of the members of the panel on their voir dire one of them stated she was the wife of a police sergeant who was a friend of the superintendent of police and that another of them had a relative who was affiliated with the Jewish War Veterans. Claimant's counsel did not challenge either of these jurors for cause; neither did he strike their names peremp-

torily as he had a right to do, although he did strike the names of four other prospective jurors. The explanation of claimant's counsel was that he "forgot" to strike these names. After the trial court refused to remove these two jurors on the ground that the objection came too late, counsel for the other side offered to consent to the removal of the two jurors and try the case with a jury of ten as is permitted under local law, but this offer was refused by claimant's counsel. During the examination of the jurors on their voir dire both of these jurors said that their connections would not embarrass them in sitting as jurors. We are clear that the objection, even if valid, came too late.

Claimant also complains that the trial court refused to permit a police officer whom claimant sought to qualify as an "expert" to testify regarding the extent to which arrests follow from tips or information given to the police by citizens. Under the circumstances of this case, the information sought to be elicited was immaterial, and the trial court properly excluded the evidence.

Two other assignments of error involve statements alleged to have been made by the trial court, which claimant's attorney believed reflected on him as a lawyer. The record is clear, however, that the comments complained of were made out of the presence of the jury, and therefore could not have affected the jury. Moreover since the case terminated, properly we believe, in a directed verdict, it is doubly clear that even if the remarks were erroneous they were not prejudicial.

Affirmed.

944; Rubenstein v. Frost, Sup., 116 N.Y. S. 681; Arkansas Bankers' Ass'n v. Ligon, 174 Ark. 234, 295 S.W. 4, 53 A.L.R. 534; Wilson v. Stump, 103 Cal. 255, 37 P. 151, 42 Am.St.Rep. 111; Williams v. West Chicago St. R. Co., 191 Ill. 610, 61 N.E. 456, 85 Am.St.Rep. 278; Kincaid Trust & Savings Bank v. Hawkins, 234 Ill.App. 64; Taft v. Hyatt, 105 Kan. 35, 180 P. 213, rehearing denied 105 Kan. 35, 181 P. 561; Fidelity & Deposit Co. of Maryland v. Messer, 112 Miss. 267, 72 So. 1004; Broadnax v. Ledbetter, 100 Tex. 375, 99 S.W. 1111, 9 L.R.A.,N.S., 1057; Tobin v. McComb, Tex.Civ.App., 156 S.W. 237.

4 See Smith v. State, 38 Nev. 477, 151 P. 512, L.R.A.1916A, 1276; Auditor v. Ballard, 9 Bush 572, 72 Ky. 572, 15 Am. Rep. 728.